## L. PUSTER & CO. v. ANDERSON, EVANS & WARD.

Decided January 17, 1902.

**1.—Vendor and Vendee—Rescission—Superior Title—Execution.**

Where one who has conveyed land by deed reserving a vendor's lien on its face, and consequently the superior legal title, transfers the purchase money notes taken by him for the land to a third person, and afterwards, as additional security for the notes, conveys the legal title itself to such third person, this will not operate as a rescission of· the original sale and conveyance, and since such latter deed does not convey an interest subject to execution, a sale of the land under execution against such third person, made to one having notice, would not affect the title of parties who had acquired the lien notes in good faith.

**2.—Same—Notice of Lien—Presumption—Findings.**

Although there is no special finding of the fact that plaintiffs, the execution purchasers, had notice that defendants held lien notes on the land, it will be presumed in favor of the judgment that they had such notice where they had served defendants with notice of their execution sale of the, land because their attorney had heard of the assertion of some claim by defendants, and such attorney, though a witness in the case, did not testify that he had no notice of defendants' claims.

Appeal from Leon. Tried below before Hon. J. M. Smither.

*Dean & Dean,* for appellants.

*Thomas B. Greenwood* and *William Wilson,* for appellees.

GARRETT, CHIEF JUSTICE.—This was an action of trespass to try title brought by the appellants against the appellees for the recovery of 160 acres of land of the D. G. Burleson survey, in Leon County. Appellants claimed the land through an execution sale against H. Levy, the assignee of certain vendors' lien notes executed by Andy Perkins to Jeff Haynes, and to whom Haynes had subsequently conveyed the land. Appellees claim under a deed from Perkins given in settlement of the notes which were held by them through a transfer from Levy. The trial below was without a jury, and from the conclusions filed by the court the following facts appear: On November 22, 1887, Jeff Haynes, who was the owner of the land, conveyed it to Andy Perkins by his deed of that date, which was never recorded, for a consideration of $1600 evidenced by four notes for $400 each, three of which were due December 1, 1888, December 1, 1889, and December 1, 1890, respectively, executed to him by Perkins. The deed retained a vendor's lien on the land to secure the payment of the notes. On the date of their execution Haynes· transferred the three notes, whose due dates are given, by his indorsement in blank to H. Levy in consideration of a credit of $1000 on his account with levy for merchandise.

Perkins took immediate possession of the land and held possession under his purchase from Haynes until April 10, 1899, when he conveyed·it to the appellees in cancellation of the purchase money notes

and has since held it as their tenant. On February 11, 1893, Jeff Haynes executed a deed for the land to H. Levy for a recited consideration of —— dollars. At the time of this conveyance, which was never acknowledged for record, $100 had been paid on the fourth note which had been retained by Haynes and Levy subsequently, and after January, 1896, made collections on the notes held by him. On March 12, 1895, Levy borrowed from L. A. Beddingfield the sum of $1890 and gave him his note for that amount, and transferred and delivered to him as collateral security therefor along with others the three Perkins notes held by him. This note was renewed by Levy March 12, 1896, and the collateral notes remained with Beddingfield. Mrs. E. Goodman took up the Levy note March 12, 1897, by executing her note to Beddingfield for the amount thereof and left with him as collateral security the Perkins notes already in his hands. She renewed this note with the collaterals March 12, 1898. On January 10, 1899, Anderson, Evans & Ward, the appellees, purchased from E. Goodman certain real estate, merchandise, and other property which had formerly belonged to H. Levy, and in the transaction agreed to pay her note to Beddingfield for $1890 and interest, in consideration among other things of the transfer and delivery to them of the three Perkins notes held by Beddingfield as collateral security for the debt. Appellants paid the note March 30, 1899, and Beddingfield made them a written transfer of the Perkins and other notes. None of the transfers of these notes were ever recorded.

On the 23d day of January, 1896, H. Levy entered into a written contract with Andy Perkins, Kinch Perkins, and John Perkins, reciting the sale of the land sued for by H. Levy to Andy, Kinch, John, and Walter Perkins on January 1, 1896, for $1200 and interest, and that the landlord's lien was retained to secure the payment of the purchase money, and that if same was not paid as it matured then a rental was to be paid of six bales of cotton per annum, and if the parties paid more than rents, etc., then the payments were to go on the premises, and failure to comply with the contract was to render it void, and the premises were to revert to Levy. It was undisputed that no sale was really made on January 23, 1896, and that the purpose of this contract was to secure the payment of Perkins' purchase money notes to Haynes transferred to Levy.

Neither Beddingfield nor the appellees ever had any knowledge of the above mentioned contract or of any attempt to rescind the sale or concel the notes prior to their delivery to the appellants. On April 10, 1899, in consideration of the cancellation and delivery to him of his notes given therefor, Jeff Haynes having transferred the fourth note to them without consideration, the land being worth less than the other three notes, Andy Perkins conveyed the land to the appellees and thereafter held the same as their tenant.

L. Puster & Co. recovered a judgment against H. Levy in the District Court of Leon County on November 11, 1898, for the sum of $677.91, and on January 13, 1899, caused an abstract of it to be re-

corded and indexed in the office of the county clerk of Leon County. An execution was issued on this judgment and levied upon the land in controversy, and it was regularly sold at sheriff's sale May 2, 1899, and bought by L. Puster & Co., the plaintiffs in execution, and a deed was executed to them therefor by the sheriff conveying all the title held by H. Levy on January 13, 1899, their bid being credited on the judgment after payment of costs. The trial judge found as a fact that Perkins had told the attorney for appellants that he held the land as the tenant of H. Levy and had been so holding it for fourteen years prior to the record of the abstract of the judgment of L. Puster & Co. v. H. Levy. There is no testimony in the statement of facts to support the conclusion, but there was no objection made to it by the appellees in the court below, nor is there any cross-assignment of error against it in this court.

The conveyance of the land by Jeff Haynes to H. Levy was not a rescission of the sale made by him to Andy Perkins, but was a transfer of the superior title held by him for the enforcement of the contract. One note had been reserved by Haynes upon which he collected the sum of $100, and the other three were retained by Levy and collections made thereon; and they were afterwards transferred by him to Beddingfield as collateral security for his debt and note for $1890, and remained with him as such security until they were sold to the appellees. It appears that the intention of the parties was not to rescind the sale but to preserve the security, and the court below is sustained by the evidence in the conclusion that Levy had no interest in the land subject to execution. Brotherton v. Anderson (decided this day by this court, ante, p. 587). The contract entered into on January 23, 1896, between H. Levy and Andy Perkins and his sons, as interpreted by the other evidence in the case in explanation thereof, appears to have been intended as additional security for the payment of the purchase money of the land, and is not conclusive evidence that the sale had been rescinded. When it was entered into Levy had already transferred the notes to Beddingfield, and it could not affect the title of the appellees to the notes acquired by them in good faith. Appellants objected to the testimony of Waltman introduced by the appellees to the effect that it was agreed by the parties when the contract was entered into that whenever sixteen bales of cotton were paid in on one of the notes executed by Perkins to Haynes it should be surrendered and canceled, on the ground that the written contract could not be varied by parol evidence. If this evidence should be rejected the judgment of the court should not be reversed, because there was sufficient evidence admitted without objection to show the nature of the contract; and even if there were not sufficient evidence to show that the contract was for additional security only as above stated, the appellees could not be affected by it. Levy having no title in the land subject to execution even if it should be conceded that the lien of the appellants could be fixed upon the land by reason of the legal title being vested in Levy by the unrecorded deed

from Haynes to him, it not appearing that the appellants when they recorded the abstract of their judgment had no notice of the lien of the notes it will be presumed in support of the judgment that they had such notice, although no special finding of the fact was made. Perkins was in possession of the land; and appellants caused appellees to be served with a notice of the sale because their attorney had heard of the assertion of some claim by them, and although a witness in the case the attorney did not testify that he had no notice of the claim before the abstract of the judgment was recorded, though it appears from the finding of the court that Perkins told that he was a tenant of Levy. These facts support the implied conclusion of the court that appellants had notice of the claim of appellees when they recorded the abstract of their judgment, and having notice that Levy's title was not such as was subject to execution, the record of the abstract of their judgment did not fix a lien on the land. The judgment of the court below will be affirmed.

*Affirmed.*

Writ of error refused.