No. 143.

J. R. HYAMS, ADM'R, vs. E. B. HERNDON ET AL.

The mere relation of attorney and client does not, of itself, disable the attorney of a judgment creditor from buying on his own account at a sale in execution of the judgment, provided he act with perfect fairness and good faith, and in no manner in opposition to the interests of his client.

When the attorney has so acted; when his client, though advised of the sale, has given no authority to buy; when the bid of the attorney was to the advantage of the client, because, but for it, the land would have been sold at a less price; and especially when, as in this case, the client having been offered the option of taking the land or the price, preferred and received the latter, he cannot, long afterwards, be permitted to assail the title of the attorney and demand to be substituted as owner under said title.

APPEAL from the First District Court, Parish of Caddo. Taylor, J.

---

*Young & Shepherd* for Plaintiff and Appellee.

*Alexander & Blanchard* for Defendants and Appellants.

---

The opinion of the Court was delivered by

FENNER, J. The substantial facts in this case are the following:

The succession of H. M. Hyams had a judgment against M. Baer for the sum of $12,000, which recognized a special mortgage and vendor's privilege upon certain lands in Bossier parish. This judgment was rendered in 1876, and in the same year the lands were sold for taxes to one Bodenheimer, whose title was afterwards confirmed by the Auditor.

Subsequently, Isaac S. Hyams, then administrator of the succession of H. M. Hyams, and I. R. Hyams one of the heirs, entered into a written agreement with Nutt and Wise and Herndon, attorneys at law, the substance of which is as follows: After reciting the judgment and tax sale above mentioned, the desire of the heirs to provoke the annulment of said sale and their inability to pay the costs and expense of such a suit, the agreement provides that said attorneys agree to sue for the rescission of the sale and for the enforcement of the judgment on the lands, and furnish the money necessary to pay costs of such proceedings and redeem the lands.

It was further stipulated that, in case they should succeed in annulling the tax sale and in subjecting the lands to sale under the judgment, they were to have for their services "fifty *per centum* of the sum bid at the sale thereof; or if bid in by plaintiffs or for them, then fifty *per centum* of the value of said lands or an undivided half interest therein."

Under this agreement the attorneys proceeded to institute the suit to annul the tax sale, in which they recovered judgment.

*Fi. fa.* was then issued on the judgment of Hyams vs. Baer, and the lands were seized and advertised for sale.

The evidence shows that the administrator was advised of the progress made; that during the pendency of the advertisement the attorneys made efforts to interest persons in the sale and to get them to attend and bid thereat; that they had no authority from the administrator to bid in the lands for the succession; and that to prevent a sacrifice of the property and for the protection of their own interests, they determined not to permit the land to go for less than two thousand dollars and instructed Col. Snider, of Bossier parish, if it brought a less price, to bid in the land and have it adjudicated to S. B. McCutchen, whom they had selected as their common agent to receive and hold title to the land for them, in order to avoid passing it into the names of a number of persons and to facilitate the transfer in accordance with settlement of interests.

The proceedings attending the sale were all regular, and not a suspicion of fraud is raised as to any of them. 'Appraisers were appointed, who appraised the land at $1200. There was open competition at the sale, the bids were run up beyond the appraisement and the land was finally bid in by Col. Snider at the price of $1600, and adjudicated to McCutchen according to instructions.

After the sale, the administrator of Hyams was advised of it and of the price at which the land had been adjudicated, and was given the option of taking one undivided half of the land or one-half of the price, whichever he preferred. The administrator replied that he wanted the money and not land. Thereupon the sum of eight hundred dollars was remitted to him by check to his order as administrator, dated April 5, 1881, which was duly paid; and there was an end of the matter until after the death of the then administrator. In September, 1883, the present administrator of Hyams was qualified, and in April, 1884, this suit was filed.

In the meantime, by settlements with Wise & Nutt, the title of the entire land had passed to E. B. Herndon, with the exception of one-sixth which McCutchen had been allowed to retain for a cash consideration.

The gist of the action is, that McCutchen was a merely interposed party and that the attorneys of the succession of Hyams were the real purchasers, which facts are not disputed; that the land sold for less than its value; that it was clearly to the interest of the succession to buy-in the land; that, therefore, the bid of the attorneys should be

considered as the bid of the succession and that the resulting title should be considered as the title of the succession; that papers of the succession show no receipt of any portion of the price for which the land was sold; and if any such payment was received, or settlement had, it was made in error as to the value of the land and as to the fact that the attorneys were the real purchasers. The prayer is that, "on final hearing the land named in the petition be decreed to belong to the succession which petitioner represents, and if any settlement with the former administrator be alleged or set up by defendants, that the same be declared null and void, and set aside as made in error and without authority."

The defense rests upon the facts of the case which we have fully stated. We have studied the record with great care and have reflected upon all features of the case without being able to discover any principle from which the plaintiff's case can derive the slightest support.

Much was said in argument, and in the opinion of the judge *a quo*, about the contract between the administrator and the attorneys, which is attacked as illegal and *contra bonos mores* and as a forbidden purchase of a litigious right. But what have we to do with that contract? Who attacks it? What relief is sought against it? The only question in this case is the validity of defendant's title to the land, and whether or not it enures to the benefit of the holders or of the plaintiff succession. This question is wholly independent of the contract under which the suits were prosecuted and depends entirely upon the validity and nature of the title conveyed by the adjudication. If, under the relations of the parties and the facts of the case, defendants had the right to bid and buy at the sale for their own account, their title is valid and cannot be assailed. If, on the contrary, their relations and the facts were such that the bid and purchase could only be made for the benefit of their client, then the plaintiff's case must succeed, unless that benefit has been waived. These questions are entirely independent of the contract for services.

Now, what prevented defendants from bidding and buying at the sale?

It was long since settled in this State that the mere relation of attorney and client does not, of itself, disable the attorney of a judgment creditor from buying for his own account at a sale in execution, provided he act in perfect fairness and good faith, and in no manner in opposition to the interest of his client. Relf vs. Ives, 10 La. 509.

We may certainly say of the defendant in this case, under the statement of facts we have given, what was said of the attorney in the case

just quoted: " Throughout the whole business the defendant appears to us to have acted with strict regard to his professional duties, and with even an anxious solicitude for the interests of plaintiff."

It is said that the land sold for less than its value. Under the evidence here presented, that is probably true. Yet it is to be remembered that most of the lands belong to the class of swamp lands subject to overflows, and that their value is purely speculative, difficult to fix, and fluctuating according to the opinion and views of those who estimate them. Moreover, the land was regularly appraised, advertised and sold at public outcry, with free competition, and no one was found to offer more than the price at which it was adjudicated. Could the title of any competent purchaser be assailed on such a ground?

It is said that it was to the interest of the succession to bid in the land. Suppose it was. Had the attorneys the right to bind the client by such a bid without his authority or instructions? The administrator was advised of the sale by sending him copy of the paper containing the advertisement, and no such instructions or authority were given to the attorney.

It is clear he intended no such authorization, as his subsequent conduct shows.

What harm, then, has befallen the succession? If defendants had not bid, the land must have passed to another purchaser at a less price, whose title would have been unquestionable.

But when we consider that, even after the purchase, the administrator was offered the option of taking half the land or half the price, and accepted the latter, it does seem that all controversy should end. This was a settlement surely within the authority of the administrator, at least so far as the title is concerned. We fail to find any error material to the question. It is said he was not advised as to the fact that the attorneys were the real purchasers. This is itself doubtful; but, if true, it does not seem to affect the case. The only question was, whether he preferred the land or the money. If he should prefer the latter when supposing the land had been bought by Mr. McCutchen, why should he reach a different conclusion if informed that defendants were purchasers.

The next claim is that he was ignorant of the true value of the land. There is nothing to show that his information was not as full as that of defendants. He knew what the land had brought at public outcry. Defendant did nothing to mislead him. He should have made inquiry.

An effort is made to show that, with or without authority, the bid and adjudication to McCutchen was actually made for the account of

all parties to the contract, including the succession for one-half, and that the administrator had certainly no right to divest the succession of this vested property by any extra-judicial settlement.

An attentive study of the evidence convinces us, as it did the district judge, that McCutchen's bid and title were in the interest of defendants only, though they offered plaintiff the option of taking the benefit to extent of one-half, which he declined.

· The district judge, while denying the relief specifically sought by plaintiff, found reason to grant a judgment annulling the judicial sale itself and all subsequent transfers. It seems needless to say that, under the prayer of the petition, which, far from attacking, claims the benefit of that sale, and especially in the absence of Baer, the defendant in the judgment executed, this relief is untenable.

We think plaintiff's demand must be rejected.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and is hereby annulled, avoided and reversed; and it is now ordered, adjudged and decreed that there be judgment in favor of defendants and rejecting plaintiff's demand at his cost in both courts.

Judgment reversed.