## W. L. Douglass v. E. A. Blount et al.

### No. 1018. Decided April 7, 1902.

**1.—Attorney—Buying at Sale Under Process He Controls.**

An attorney stands in no such relation of trust towards the adverse party as will prevent him from buying the property of defendant for himself at judicial or execution sale under process controlled by him as counsel for plaintiff. (P. 379.)

**2.—Same.**

A purchaser of property by an attorney, at a sale under process controlled by him, without circumstances impeaching the fairness of the transaction, and when his client consents to the purchase or the attorney bids sufficient at the sale to discharge the judgment, will be held good against any claim of the defendant in the writ. (Pp. 375-379.)

**3.—Same—Cases Limited.**

McLaury v. Miller, 64 Texas, 384; Mackay v. Martin, 26 Texas, 62, and numerous cases outside of Texas, on purchase by an attorney under process controlled by him, discussed, limited, and reconciled with the ruling herein. (Pp. 375-379.)

**4.—Vendor and Vendee—Superior Title—Assignment of Purchase Money Note—Foreclosure—Rescission.**

The right of a vendor reserving a lien securing purchase money notes to rescind for nonpayment and recover the land, is lost by his assignment of one of the notes and the election of its holder to sue for the money and foreclose his lien, although such vendor offer to redeem from the first sale, to which he was not a party. (Justice Williams dissenting.) (Pp. 379-383.)

**5.—Same.**

A vendor reserving a lien (whereby he still retained the superior title) to secure purchase money notes, assigned one of them to a holder, who foreclosed in a suit against the maker, and it was bought, at the sale, by another person. The remaining notes, with their lien and his interest in the land the vendor transferred to another, who sued on them, and, limitation being plead to one of the notes, sought to recover the land by virtue of the superior title reserved by the vendor, tendering to the purchaser at the foreclosure sale the money paid and to the holder of the judgment on the note first assigned the amount of his debt. Held, that the right of rescission by the vendor on nonpayment of the notes was lost by the assignment of and foreclosure on one of them, and plaintiff had no right to discharge such incumbrance and rescind for nonpayment of his own. (Justice Williams dissenting.) (Pp. 379-383.)

**6.—Same.**

The lien for the security of the assigned and of the unassigned notes being equal, proportionately to their amounts, the owner of the latter had no right, such as is possessed by a junior mortgagee, to redeem from a foreclosure of the other incumbrance to which he was not a party. (Justice Williams dissenting.) (Pp. 380, 381.)

**7.—Same.**

The right of the holder of the remaining notes, after foreclosure upon one which he assigned was had without making him a party, the lien of all the notes being equal proportionately, is to foreclose and sell, if not barred by limitation, dividing the net proceeds between himself and the purchaser at the first foreclosure, in the ratio of the amount of his notes to that of the one foreclosed by the first sale. (Justice Williams dissenting.) (Pp. 380-383.)

**8.—Dissenting Opinion.**

In the dissenting opinion of Justice Williams, it is maintained that the superior title to the land, on which the right of rescission by the vendor depends, did not pass out of him by assignment of one of the purchase money notes, though incapable thereafter of being exercised to the prejudice of his assignee, and was not affected by the foreclosure to which he was not a party; and that it was such a right as entitled him to remove the incumbrance of the other lien and foreclosure in order to perfect his title by securing the right to rescission. (Pp. 383-391.)

Error to the Court of Civil Appeals for the First District, in an appeal from Liberty County.

Blount sued Douglass and others, and had judgment from which Douglass appealed and on its affirmance obtained writ of error.

*J. N. Votaw* and *J. D. Martin,* for plaintiff in error.—Plaintiff Blount having only such rights as his vendor, Fortescue, and the latter having lost his paramount title in the land by the foreclosure sale under a judgment in favor of the Reliance Lumber Company upon the third vendor's lien note, must depend entirely upon a valid debt susceptible of being reduced to a judgment, and also a valid lien, and there being no debt which could be reduced to a judgment against any one in his favor he can not be placed in the attitude of a mortgagee with a right to redeem. Gunst v. Pelham, 74 Texas, 586; Roeder v. Robson, 20 Texas, 754; Gardener v. Griffith, 55 S. W. Rep., 314; Whitehead v. Fisher, 64 Texas, 638; Douglass v. Blount, 55 S. W. Rep., 526; Vieno v. Gibson, 85 Texas, 434.

The court erred in setting aside the sale of the land to defendant Douglass at the instance and in favor of W. S. Swilley, who had no interest in the land, and because, as against the Reliance Lumber Company and W. S. Swilley, the sale was valid. Ayers v. Duprey, 27 Texas, 593; Boggess v. Howard, 40 Texas, 158; Riddle v. Turner, 52 Texas, 150.

After a foreclosure sale, under a judgment, of a tract of land, the judgment lien is exhausted and the owner of the judgment is no longer a lien creditor as to the land sold. Gardener v. Griffith, 55 S. W. Rep., 314.

When the Reliance Lumber Company sued on the third note for $452 and obtained a foreclosure of the vendor's lien, that was an affirmance of the contract of sale on the part of Fortescue, the assignor of the note, and the legal title to the land was transferred to Watson, the vendee of the land, and afterwards to Douglass, who purchased under the foreclosure sale. Gardener v. Griffith, 55 S. W. Rep., 314; Coddington v. Wells, 59 Texas, 49; Douglass v. Blount, 55 S. W. Rep., 526.

*Bullitt & Louis,* for defendant in error Swilley.—The District Court did not err in setting aside the sheriff's sale to W. L. Douglass, and the Court of Civil Appeals did not err in affirming this decision, because where an attorney controlling an execution purchases property, sold thereunder, unless the sale was fairly made and for a fair price, he holds it in trust for the benefit of the parties to the execution, and the sale will be set aside at the instance of either party interested, upon tender to such purchaser of the amount paid by him for the property. Mackay v. Martin, 26 Texas, 57; McLaury v. Miller, 64 Texas, 381.

Where there are irregularities in procuring the judgment, and the judgment is subsequently reversed, any excution sale under the judgment made before its reversal will be set aside, if the land was sold for an inadequate price. Martin v. Anderson, 4 Texas Civ. App., 111; Irvin v. Ferguson, 18 S. W. Rep., 820.

*Geo. C. Greer,* for defendant in error Blount.—A decree is res adjudicata only as to the issues involved in the pleadings and which had necessarily to be decided. While the Nebraska suit did determine that there was no personal liability of Watson on the notes, still it did not determine that no debt or charge against the land existed, and did not adjudicate or destroy the lien to the amount of the notes, and did not involve the superior legal title inherent in Fortescue as original vendor under an express reservation of the lien. The effect of the judgment is diametrically the opposite; because the answer of Watson expressly avers the debt as a charge against the land and Cobb. Freem. on Judg., 3 ed., 611, sec. 572; 2 Black on Judg., secs. 504, 610 to 615, 618; Philipowski v. Spencer, 63 Texas, 607; Converse v. Davis, 90 Texas, 466; Barnett v. Pool, 23 Texas, 520; Moseby v. Burrow, 52 Texas, 404.

Blount held a valid lien and charge or debt against the land, also the superior legal title thereto. Same authorities; also Hamblen v. Folts, 70 Texas, 132; White v. Cole, 29 S. W. Rep., 759; Jackson v. Ivory, 30 S. W. Rep., 716.

The suit of the Reliance Lumber Company against Watson et al., No. 2005, did not affect Fortescue one way or another, because he was not a party thereto. It simply transferred from Watson to Douglass the equity of redemption to be exercised in the first instance, should he see proper to avail himself thereof. Failing to redeem, Blount had the privilege (but we do not think it was his duty) to do so. Robertson v. Guerin, 50 Texas, 317; Harris v. Catlin, 53 Texas, 1.

Blount and Douglass claim under the same deed and transaction—the deed from Fortescue to Watson and the notes arising out of same. This transaction created the privity of estate, or relation, that gave Blount the right to redeem. How Douglass can claim under one of same series of notes given for same deed, and deny at same time the privity of estate is utterly beyond our comprehension.

The entire mortgage debt was represented by the three notes. The cash consideration (one-third of the purchase price) was no part of it.

Even if Blount occupies as low a plane as a junior mortgagee he must, to redeem, only offer to pay off the balance of the mortgage debt besides that held by him; that he did. Douglass had no claim to or interest in the cash payment. It is true he bought Watson's estate in the land; but Watson could not himself have plead limitation against the purchase price, as Douglass did, and forced Fortescue or anyone holding under him, to refund the cash payment as a condition for recovery of the land. Neither can Douglass. Whitehead v. Fisher, 64 Texas, 638; Douglass v. Blount, 55 S. W. Rep., 526; Collins v. Riggs, 14 Wall., 491; Moore v. Giesecke, 76 Texas, 551.

If the court erred in setting aside the sale at Swilley's instance, still the plaintiff Blount had the right to redeem, and there is no error in the judgment rendered in his behalf.

As holder of two of the notes and the superior legal title, after offering to Douglass the right to redeem and thus perform the contract as one standing in Watson's shoes, and because Douglass plead limitation, thus repudiating the contract, and refused and failed to pray for any equitable prorating of the proceeds of the land or the land itself, Blount, in the attitude of the case, had the right as against Douglass to recover the land and therefore, from this standpoint, there was no error in the judgment rendered in his favor.

If there was error as between Douglass and Swilley, there was none as between Blount and Douglass in the judgment.

If Douglass had equities it was his duty to plead them. He did not, but stood on whatever legal rights he had. He also refused the equities tendered him. Having no legal rights he really is in no position to complain. He should either have asked to redeem, or to have the land resold and the proceeds equitably prorated, or the land equitably divided. On either of these grounds the plaintiff stood ready to meet him. Failing to plead his equities he can not complain. White v. Cole, 29 S. W. Rep., 760; Land and Cattle Co. v. Boon, 73 Texas, 549; Moore v. Giesecke, 76 Texas, 551; Ufford v. Wells, 52 Texas, 612.

An attempt to procure a personal judgment on vendor's lien notes, whether effectual or not, will not operate as a waiver of vendor's lien, nor prevent a subsequent foreclosure or assertion of same. Hence the court did not err in so holding. Waldron v. Zacharie, 54 Texas, 504; McAlpin v. Burnett, 19 Texas, 499; Harris v. Catlin, 53 Texas, 8; McPherson v. Johnson, 69 Texas, 487.

Even where a suit by the vendor on the debt and to foreclose may of itself operate as a waiver of the superior legal title, so as to preclude the remedy of rescission, still when the vendee or any subsequent vendee refuses to pay the debt and perform the contract, but repudiates the contract by pleading limitation against the notes, such right, once waived, is by the inequitable action of the vendee revived. McPherson v. Johnson, 69 Texas, 487; Harris v. Catlin, 54 Texas, 8; Moore v. Giesecke, 76 Texas, 543; Gardener v. Griffith, 55 S. W. Rep., 314.

Douglass stands in the attitude of a subvendee under Watson, and

not being a party to the Nebraska proceeding, any waiver resulting from that action would not apply in his favor. Gardener v. Griffith, 55 S. W. Rep., 314; Ufford v. Wells, 52 Texas, 612; Thompson v. Robinson, 54 S. W. Rep., 243.

The right of redemption was independent of that of rescission, and to be exercised without reference thereto.

Douglass never acquired any part of the superior legal title. It was never transferred to him and did not pass by mere assignment of the note. Hamblen v. Folts, 70 Texas, 135; Baker v. Compton, 52 Texas, 261.

The mere assignment by Fortescue, the vendor, of one of the vendor's lien notes (the one for $450), without any agreement to give it a preference over those retained, would not of itself have that effect. Salmon v. Downs, 55 Texas, 243; Wooters v. Hollingsworth, 58 Texas, 371; Mc-Michael v. Jarvis, 78 Texas, 671; Douglass v. Blount, 93 Texas, 499; Whitehead v. Fisher, 64 Texas, 638.

The right of rescission was also inherent in Blount, being revived (if ever lost) by Douglass pleading limitation and refusing to do equity.

BROWN, ASSOCIATE JUSTICE.—W. M. Fortescue conveyed to Isaac Watson a half league of land for $3321, of which one-third was paid in cash, and for the remainder two notes for $881 each, payable in one and two years, and one note for $452, payable in three years, were executed by Watson. The deed executed by Fortescue reserved a lien to secure payment of the notes. Fortescue at once assigned the third note to W. S. Swilley, who, with one Cameron, afterwards indorsed it to the Reliance Lumber Company. That company brought suit upon the note against Watson as maker and Swilley and Cameron as indorsers, and sought also a foreclosure of the lien upon the land, failing, however, to make Fortescue a party. A judgment was recovered in that suit against all of the defendants and foreclosing the lien as sought. Order of sale was issued upon it and the land was sold thereunder and W. L. Douglass became the purchaser for the sum of $50. Thereafter Swilley prosecuted a writ of error from the judgment and it was reversed, because he had not been properly served, and the cause as to him was remanded for further proceedings, but the judgment as against the other defendants and the foreclosure was not disturbed. The cause as to Swilley has never been disposed of, but after the reversal, he settled with the plaintiff therein and secured from it an assignment of all its rights in the judgment and the note on which it was founded.

Prior to the recovery of the judgment referred to by the Reliance Lumber Company, Fortescue had brought suit in Nebraska against Watson, seeking personal judgment alone against him upon the first two notes. Watson defended on the ground that the purchase of the land was in fact made by and for one Emory A. Cobb, and that the deed was made to and the notes executed by him (Watson) as the depository of the title for Cobb, and that the agreement of all parties was that Watson

was not to become personally bound upon the notes. Upon this defense, judgment was rendered in his favor. There were no parties to this proceeding except Fortescue and Watson. Thereafter and subsequent to all of the transactions before stated, except the assignment from the Reliance Lumber Company to Swilley, Fortescue indorsed and assigned to E. A. Blount the two notes originally retained by him, and also executed to Blount a conveyance of all his (Fortescue's) title to the land for which the notes were given.

The present action was brought by Blount December 10, 1898, against Watson, Cobb, Douglass, Swilley, and others. In the amended pleading on which the last trial was had, he stated the history of the transactions and offered to release all claim upon the land if the defendant entitled thereto would pay the notes held by him; alleged that he had tendered to Douglass the amount paid by the latter at the sheriff's sale, and that he had deposited in court a sum sufficient to pay off the Swilley judgment, which he tendered to defendants, and that Douglass had asserted against one of the notes the defense of limitation. He prayed, first, that he be allowed to recover the land; or, if that relief should be denied, second, for judgment against Watson for the amount of his two notes and a foreclosure of his lien and sale of the land and the application of the proceeds to his claim, or proportionally to such claim and to the $452 note; or, if this should be denied, for a proportionate division of the land between him and the defendants. Watson and Cobb made no defense; Douglass pleaded limitation against one of the notes sued on, set up his title under the facts stated, and pleaded the Nebraska judgment in favor of Watson in bar of any recovery on the notes. He denied plaintiff's right to rescind the original sale of the land and to recover it, but did not offer to pay the notes sued on. Swilley, in addition to pleading the facts upon which his rights under the $452 note and the judgment thereon depend, attacked the sheriff's sale to Douglass and sought to have it set aside on the ground that Douglass was the attorney for the Reliance Lumber Company in that proceeding, and that the sale was made irregularly and for a grossly inadequate price.

The judgment of the District Court, which was affirmed by the Court of Civil Appeals, set aside the sale to Douglass, requiring the return to him of the amount of his bid and interest; ordered the money paid in by plaintiff to pay the balance of the judgment on the $452 note to be paid to Swilley, and adjudged the land to Blount.

The Court of Civil Appeals stated meagerly the facts bearing upon Douglass' purchase, but the testimony is undisputed and proves that Douglass and Jackson, a firm of attorneys, represented the Reliance Lumber Company in procuring the judgment under which the land was sold, and after the land had been advertised for sale, Douglass informed the Reliance Lumber Company of the fact that the land would be sold and the time and place, advising his client to purchase the land; but the lumber company declined to do so and instructed Douglass not to buy the land for it. He then stated to the officers of the company that

he would buy it for himself, to which they assented. Swilley was de-- fendant in the execution and liable for the amount which might remain. unpaid after the subjection of the land, and Douglass informed him on the day before the sale that it would occur, stating that Douglass in-- tended to buy the land as his client declined to do so. Douglass invited Swilley to join him in the purchase of the land, which the latter de-- clined to do. On the day of the sale, Swilley was present and did not: bid upon the land nor offer any objection to the sale being made at that: time. As to the value of the land, Swilley testified that he was afraid to bid upon it on account of the condition of the title, but that the land was worth on the day of sale about $2 per acre sold in the usual manner of part cash and the balance on time. He states that at the time there was outstanding incumbrance of $2000, besides the notes held by Blount and the amount of the judgment. Swilley says, with reference to the sale and the reason why there were no other bidders, "I think everyone else felt about it as I did as to the land and its value at the time of ·the sale."

The Court of Civil Appeals disposed of the sale to Douglass in very few words, but we gather from the opinion that the judgment of the trial court was affirmed because Douglass was attorney for plaintiff in the writ, holding that a purchase by an attorney, with the consent of his client, is void in favor of the defendant in the execution. We assume, then, that the court sustained the judgment of the District Court setting aside the sale to Douglass upon the contention presented by the attorneys for Swilley, based upon McLaury v. Miller, 64 Texas, 384. That case rests mainly upon Howell v. Baker, 4 Johnson's Chancery, 118, in which Chancellor Kent wrote in terms severely condemning the practice of an attorney buying property exposed for sale under process controlled by him. That eminent chancellor quoted from Hall v. Hallett, 1 Cox Chancery, 134, this language: "No attorney can be permitted to buy in things in a course of litigation, of which litigation he has the management. This the policy of justice will not endure." The chancellor then continued the opinion in the following language: "But though the rule disqualifying trustees, and particularly solicitors and attorneys, from purchasing at sales brought about through their agency, has strong pretensions to be applied to this very case, I do not perceive it to be incumbent upon me, at present, to decide that point. The purchase by the defendant B. was made under special circumstances, which are sufficient, of themselves (and particularly when taken in connection with his character as attorney to the execution) to constitute him a trustee for the parties whose interests were concerned in the sale." The following comment upon that opinion by Chief Justice Walworth states forcibly the fallacies in Chancellor Kent's dicta: "I consider the fact that the purchase was made by the attorney, without the consent and against the interest of some of his clients, or those for whose benefit he is supposed to act as attorney, as important in this case. For nothwithstand-- ing the court, in Howell v. Baker, 4 Johnson's Chancery Reports, 121,

said that the rule disqualifying solicitors and attorneys from purchasing at sales brought about by their agency, had strong pretensions to be applied to the case of an application by the defendant in an execution to set aside a purchase made by the plaintiff's attorney, the late chancellor intentionally avoided deciding that point, though it was directly before him in that suit. I think the doctrine has never been carried to that extent, even in the decisions of the English courts, which have gone the farthest on this subject. The reasons why the attorney or agent is not permitted to purchase is because it is supposed to be inconsistent with the duty which he owes to those for whom he is employed to act, and from the relation which exists between the agent and his principal, or between the attorney and his client. But these reasons can not apply to the defendant in the execution. The plaintiff's attorney owes no allegiance to the defendant and is under no obligation of duty to take care of his interest; neither is there any confidential connection existing between them. There can be no doubt of the right of a plaintiff to purchase on his own execution. And I think there can be as little doubt of the right of the attorney to purchase for his client, with his assent, or to purchase for himself, or as the agent of a third person, with the like permission." Hawley v. Cramer, 4 Cowen, 733. In the case of Howell v. Baker, the chancellor cites the following three cases: Ex parte James, 5 Vesey, 708; Ex parte Hughes, 6 Vesey, 617, and Hall v. Hallett, 1 Cox, 134. Each of the first two cases involves the validity of a purchase made by the assignee in bankruptcy and his attorney of property belonging to the estate, and the court in each case held the sale invalid. No court in this country would hesitate to make the same ruling upon a like state of facts. The case of Hall v. Hallett presented a most flagrant fraud perpetrated upon minors by their guardian and his attorney, by which they acquired the estate of the wards through a purchase by the attorney. The proceeding was by the wards against the guardian and the attorney to set aside the sale and require them to account for the property which they had thus fraudulently misapplied. In discussing the validity of an assignment made by the guardian to his attorney of claims belonging to the wards' estate during the pendency of the guardianship, the court used the language quoted by Chancellor Kent: "No attorney can be permitted to buy in things in a course of litigation, of which litigation he has the management. This the policy of justice will not endure." This language had no reference to the rights of the maker of the note assigned, but referred alone to the relation that the guardian and attorney bore to the wards themselves. Much theorizing has been based upon the expression of Lord Thurlow, distorting it into the assertion of a trust relation between an attorney and the opposite party in the suit, which, we think, will not endure careful investigation.

Leisenring v. Black, 5 Watts, 304, cited in McLaury v. Miller, was a suit by a party to set aside a sale at which the attorney of plaintiff had purchased the property for the exclusive benefit of a coplaintiff in the

execution; and the court held that the attorney's obligation to each of his clients was equal, and he could no more purchase for one client to the exclusion of the other than he could purchase for himself in fraud of both,—a very proper and just decision, not at all in point in the case now under discussion, nor does it support the decision in McLaury v. Miller.

Howell's Heirs v. McCreery's Heirs was cited by Judge Stayton. In that case, an attorney of the plaintiff in the writ purchased the property for himself and another party. The defendant in the writ brought suit to recover the property and Judge Robertson said: "It seems to us that the purchase by the attorney under his client's execution should be deemed to have been invalid and voidable for the following reasons: (1) A purchase by an attorney under his client's execution over which he had control, predisposes a chancellor to look on the transaction with a peculiar jealousy and scrutiny, and should never be sustained when it was for a grossly inadequate price and exhibits a semblance of unfairness." The court then proceeds to show. that the price was grossly inadequate and that the circumstances proved that the sale was unfairly made. As usual the learned judge quoted the remark of Lord Thurlow in the case of Hall v. Hallett, but did not apply it in that case.

Blight's Heirs v. Tobin, 7 Monroe, 612, involved a purchase by the attorney of the plaintiff in the writ, and the court set the sale aside upon the ground of inadequacy of consideration and unfairness, saying: "It has been held, or at least it has been said by some chancellors, that a purchase by counsel in such circumstances ought not to be permitted to stand. * * * But without approving or disapproving these authorities and not wishing to be understood that we go the whole length of this doctrine, all the use we shall make of it is to show that the chancellor, if he does not carry out this doctrine, will scrutinize a purchase thus made by counsel with greater strictness than he would a purchase made by one who had no control over the execution, and if there be circumstances or grounds to make such purchaser a trustee, it will be done, securing to him all the money which he may have paid."

The honorable court then proceeded to show that the sale in that case was for a grossly inadequate price and under circumstances which would warrant any court of equity in setting the sale aside.

Harper v. Perry, 28 Iowa, 58, was a suit by a party to set aside a purchase made by plaintiff's attorney of the property of the client, in litigation at the time, without the knowledge of the client and against his interest. The case is not in point.

Mackay v. Martin, 26 Texas, 62, was decided by the three eminent judges who formed the first Supreme Court of our State and the opinion was delivered by Justice Wheeler, in which he quoted from Chancellor Kent, as did Judge Stayton in McLaury v. Miller, and, like Chancellor Kent, Judge Wheeler based the decision upon gross inadequacy of price paid and the unfairness in the sale.

The authorities cited by Judge Stayton do not sustain the contention in this case, and, upon a careful consideration of the case of McLaury v.

Miller, it will be found that the eminent jurist who wrote the opinion followed the example of the chancellors in quoting the general language of criticism upon the practice of attorneys buying at sales under writs controlled by them, but decided the case upon the ground that the price was inadequate and the circumstances sufficient to justify the court in setting the sale aside. The judgment in that case does not rest upon the proposition that the sale was void because the purchaser was the attorney of the plaintiff in the writ. The judgment in McLaury v. Miller was put upon this ground: "The inadequacy of price in this case is manifest, and it has been said in many cases where this is true that slight additional circumstances will justify the inference that in a legal sense the sale is fraudulent. The circumstances in this case we deem sufficient."

We have gone thoroughly into the examination of all the cases cited by Judge Stayton in McLaury v. Miller, have examined all authorities that we have been able to find bearing upon this question, and we have found no case in which, at the instance of the defendant, it has been held that a sale of land under judicial process was void because the purchaser was attorney for the plaintiff in a writ, unless the circumstances impeached the fairness of the transaction. It is a well settled rule of law that an attorney can not, for himself, buy property exposed to sale by process under his control without the consent of his client, unless he bids sufficient amount to discharge the judgment debt. This rule has been rigidly enforced by the courts and should not be relaxed, for the delicate relation of trust between attorney and client should not be imperiled by the intrusion of the selfish interest of the trustee.

The authorities justify the conclusion that when an attorney purchases property at a sale under process controlled by him, without circumstances impeaching the fairness of the transaction, and when the client consents to the purchase, or the attorney bids sufficient at the sale to discharge the judgment, such sale will be held good against any claim of the defendant in the writ. LeConte v. Irwin, 19 S. C., 559; Cavender v. Heirs of Smith, 1 Clark (Iowa), 306; Grayson v. Weddle, 63 Mo., 539; Hess v. Voss, 52 Ill., 481; Relf Syndic v. Ives, 10 La., 689; Hyams v. Herndon, 36 La. Ann., 879.

In LeConte v. Irwin, above cited, the court said: "We do not see why the attorney of the plaintiff, after judgment rendered and entered, may not be a bona fide bidder at a judicial sale fairly conducted, as well as any other person. He has no duty to perform that is inconsistent with the character of purchaser. The law looks with jealousy upon contracts between an attorney and his client to the disadvantage of the latter, but here there was no contract with the client. Miles v. Ervin, 1 McC. Ch., 524. The complaint is not made by the client plaintiff but by the defendant. The interests of defendants in general require that everybody may bid. If the plaintiff's attorney is forbidden to bid, the defendant is thereby injured by the decrease in competition. If an attorney complies with his bid, or procures another to do it by payment out of his own

funds, on what grounds is it less a bona fide bid than if made by some other person?" We think the court of South Carolina correctly puts the matter upon the ground that there is no relation of confidence or trust between the attorney of the plaintiff and the opposite party. The truth is, and must be so recognized by every lawyer, that of all people, the lawyer has least confidential relations with the party against whom he is conducting litigation. In the nature of things, they deal at arms length. There is no relation of contract between them; on the contrary, the attorney is under contract with his client to prosecute the claim of his client against the opposing party with the purpose of securing for his client all that the law and the evidence will justify in fairness and honorable dealing, and it would be placing an attorney in an exceedingly awkward position to say that he was under obligation to his client to press a claim to collection on the best terms consistent with right, and at the same time hold him obligated by some imaginary trust relation between him and the defendant to make the property exposed to sale bring the entire amount of his client's debt. The statement of the proposition shows the absurdity and the unsoundness of the position which asserts a purchase by the attorney under such circumstances to be void upon the ground that he occupies a trust relation to the opposite party. As was said by the court of South Carolina, it is to the interest of both parties to the execution that everybody should bid, and if a rule is adopted by which the attorney of the plaintiff would be disqualified as a bidder, the defendant would be thereby deprived of the benefit of such bidding. We can find no sound reason of public policy upon which to base such restriction and no authority to sustain it.

The relation that attorneys occupy towards their clients is of a very delicate character, in the highest degree confidential, and demands of the attorney the utmost good faith and that he refrain from "the appearance of evil" in the conduct of his client's business. Self-interest must not be allowed to modify the zeal of an attorney nor corrupt his loyalty to his client. No lawyer is justifiable in acting unfairly towards the opposite party, either in the interest of his client or himself, and slight circumstances tending to prove conduct by an attorney which has prevented property exposed to sale under his direction from bringing a fair price ought, at the instance of either party, to be held sufficient to set the sale aside. This is really the rule announced in McLaury v. Miller. We believe the rule contended for would embarrass the enforcement of judgments, complicate the relations between clients and attorneys, and the duties of attorneys to the opposing parties, resulting in no substantial benefit. We therefore conclude that the District Court erred in setting aside the sale made to Douglas.

The most important and most difficult question in this case arises out of the holding by the Court of Civil Appeals that Blount had a right to recover the land in question because Douglass interposed a plea of the statute of limitation against the notes sued upon, they being for a part of the purchase money of the land. If Blount held all of the notes given

for the purchase money of the land and no foreclosure had occurred, he would have the right, upon the interposition of the plea of limitation, to rescind the contract of sale and recover the land, for, being the owner ·of all of the purchase money notes and of the legal title, he would be in a position to rescind the contract in whole by surrendering all of the notes and placing the vendee in the position he was before the contract was made. When, however, Fortescue assigned one of the notes to Swilley, he put it out of his power to rescind the whole contract; therefore his right of rescission ceased to exist, and having no right of rescission himself at the time he conveyed to Blount, he could pass no greater right than he possessed. The legal title, as it is termed, and the purchase money notes being once separated and held by different people, the right ·of rescission ceased for the time being; but upon the legal title and all ·of the purchase money notes being again united in the same person, the right of rescission would be revived. White v. Cole, 87 Texas, 500. But in that case no foreclosure had occurred, and the legal title was voluntarily conveyed to the holder of the note.

After he assigned the note, Fortescue held the legal title in trust to se·cure the payment of the notes retained by himself and the one assigned. The legal title in Fortescue amounted simply to a trust and he could not so dispose of the legal title as to impair the lien of the note he had transferred. Loan Co. v. Beckley, 93 Texas, 272; Russell v. Kirkbride, 62 Texas, 457. The title which remained in Fortescue was not the subject ·of sale under execution. Willis v. Somerville, 22 S. W. Rep., 781. Application for writ of error presenting this question alone was refused. 'The reserved title could not have been conveyed to Fortescue to the prejudice of the holder of the notes for the purchase money. It was not such an interest in the land as would pass by devise of lands. Summerhill v. Hanner, 72 Texas, 228. If the vendor had parted with all the notes, he would not have been a necessary party. to a foreclosure, but the title would be perfected upon foreclosure and sale at the suit of the assignee ·of the notes. McCamly v. Waterhouse, 80 Texas, 341. It is apparent, then, that the legal title that remained with Fortescue after the assignment of one note to Swilley was not a property right in the land that ·could be incumbered by the transferred note.

By the transfer of one of the purchase money notes to Swilley, the lien upon the land passed to the assignee in the proportion that the assigned note bore to the whole debt secured upon the land, and he was, by the transfer and delivery of the note, empowered to foreclose upon the land to the. extent of his lien. 9 Enc. of Pl. and Pr., 270c; Lynch v. Elkes, 21 Texas, 229; Pugh v. Holt, 27 Miss., 461; Cain v. Hanna, 63 Ind., 411; Goodall v. Mopley, 45 Ind., 358. The foreclosure by the lumber company of the note assigned to Swilley did not affect the rights of Fortescue, who was not made a party, but, by his purchase, Douglass ac·quired the title of Cobb, the original vendee, and the interest that the lumber company had in the land, which gave Douglass title to so much as the foreclosed lien represented. Pugh v. Holt, 27 Miss., 461; Thomp-

son v. Robinson 93 Texas, 170; Foster v. Powers, 64 Texas, 250; Dean v. Hudson, 1 Posey U. C., 371. Douglass held the land under his purchase subject to the lien of the outstanding notes in the hands of Fortescue.

While Fortescue held all of the notes, he had the right, upon the breach of the contract or the repudiation of it by the vendee, to claim the land or to demand the money and foreclose the lien of the notes upon the land; but he had not the right, at the same time, to claim both the land and the money. Gardener v. Griffiths, 93 Texas, 355. A foreclosure of the notes and a sale of a part of the land by Fortescue would have affirmed the contract as to the whole of the land and he could not afterwards recover that portion which he had not sold. Gardener v. Griffiths, supra. Having assigned one of the notes and a part of the land to Swilley, the right to demand the money upon that note and to foreclose and enforce the payment of it by the sale of the land passed by the assignment. Whitehead v. Fisher, 64 Texas, 639. Certainly it could not be that Fortescue had the right to reclaim the land, and, at the same time, the assignee could demand the money. It follows that when the lumber company exercised the privilege of foreclosing it was an election to proceed against the land, and placed it beyond the power of Fortescue or the lumber company to rescind the sale to Cobb, while the sale under the foreclosure judgment remained in force.

It is manifest that the right of Blount to rescind depends upon his right to redeem the land from the sale made under the judgment of the lumber company, by which he could acquire the note foreclosed. Admitting, for the sake of the argument, that redemption would restore the right of rescission, it is certainly true that if he can not redeem, his right to claim the land can not be revived and asserted in this case.

In his work on Equity Jurisprudence, section 1220, Mr. Pomeroy says: "Any person who holds a legal estate in the mortgaged premises, or in any part thereof, derived through, under, or in privity with the mortgagor, and any person holding either a legal or equitable lien on the premises, or any part thereof, under or in privity with the mortgagor's estate, may also in like manner redeem from the prior mortgage." In Whitehead v. Fisher, 64 Texas, 639, this court held that the holder of one of a series of purchase money notes might redeem the land from a sale made under a judgment and foreclosure, to which he was not a party, upon another note of the same series, which had been transferred with a right of prior payment, because the holder of the postponed note was in the attitude of a subsequent mortgagee. Under the facts, the assignment of the note by Fortescue to Swilley gave no priority of right over those retained; the holders of the several notes occupied the relation of equal lienholders under the same mortgage. Salmon v. Downs, 55 Texas, 243; Wooters v. Hollingsworth, 58 Texas, 371: McMichael v. Jarvis, 78 Texas, 672. Fortescue having voluntarily parted with the right to reclaim the land, he and Swilley held the notes as if the lien had never been reserved in the face of the deed or the notes; each might foreclose the lien of his note or notes. Accepting the rule laid down in the

case of Whitehead v. Fisher as the established law in this State, Blount does not come within its terms, because the notes which he holds were never subordinate in any way to the lien of the note foreclosed by the lumber company, nor did the foreclosure and sale under that note in any manner impair the rights of Fortescue. He had the same right to foreclose upon the land that existed before the foreclosure by the lumber company, by which he can secure his proportionate part of the value of the land.

It may be contended, however, that, as the legal title remained in Fortescue and was assigned to Blount, the note transferred to and foreclosed by the lumber company held a lien upon that legal title, and the foreclosure terminated the right to rescind. The fact that the note held a lien upon the land to which the legal title attached does not give the right of redemption, because the notes which Fortescue owned at the time of the foreclosure held an equal lien with the note foreclosed and there was no superiority of the lien foreclosed over that which Blount now asserts. The term "legal title," as applied to that which was reserved to the vendor by the sale, is misleading unless it be understood with the qualification that it is not a property right in the land, but simply a trust which existed in Fortescue for the benefit of himself and of the owner of the foreclosed note equally. This trust was of a very peculiar nature, for while the title was held for the benefit of the assignee of the note, the lumber company could not have forced Fortescue to convey that title to it to enable it to enforce its own debt, nor could it have compelled him to assert the legal title in its behalf. Loan Co. v. Beckley, 93 Texas, 267. The object of redemption in this case would be to acquire the debt foreclosed so that the right to reclaim the land might be asserted. If the owner of the assigned note could not compel the trustee to execute the trust and assert the title in execution of the trust, then by what rule of right can it be held that the trustee could compel the beneficiary to assign and transfer its debt to him for his own benefit?

The foreclosure by the lumber company did not destroy the right of rescission in Fortescue, for he parted with that when he assigned one of the notes, and the enforcement of the lien made the assertion of the reserved title impossible.

The scope of the doctrine that the vendor under a deed reserving a lien may reclaim the land if the purchase money be not paid would be greatly extended if it should be held that Blount, under the facts of this case, has the right to set aside the judgment foreclosing the lien in favor of the lumber company and sale thereunder, thereby annulling the election made by Fortescue in transferring the note and by the assignee in foreclosing and selling the land. Such ruling would disregard the rights of Douglass, acquired when the rights of rescission had been voluntarily abandoned by the original vendor. Redemption by Blount would impose upon Douglass the burden of paying the entire judgment under which he purchased the land as well as the notes held by Blount himself, or to surrender his right acquired from the original vendee and from the assignee,

·of the note and receive alone that which he had paid. It would be no less just to apply this doctrine to a case in which the vendor's lien exists without special reservation, but our courts have held that the holders of ·such notes have no remedy but to enforce the debt.

Blount has not the right to redeem the land; therefore he can not re- ·cover it in this suit, but must rely upon his notes as if the lien had not been expressly reserved.

It is ordered that the judgments of the District Court and Court of Civil Appeals be reversed, and that this cause be remanded to the Dis- ·trict Court of Liberty County with instructions to try the case upon the ·suit of Blount to recover upon the vendor's lien notes and to foreclose the vendor's lien. Swilley having no interest in the notes sought to be fore- ·closed nor in the land is therefore not entitled to participate in the pro- ·ceeds of the sale of the land. If Blount shall recover upon one or upon both notes, and the lien of such note or notes be established, then the court should foreclose the lien and order the land to be sold as under ·execution, the proceeds to be distributed as follows: 1. To the pay- ment of the costs of the suit and the cost of sale and collecting the money (which is not intended to direct the disposition of the cost be- ·tween the parties). 2. The balance of the proceeds of the sale of the land should be divided between Blount and Douglass in the following manner: The principal of the note or notes foreclosed in this suit shall be taken to represent the interest of Blount, and the principal of the note heretofore foreclosed under which Douglass purchased shall repre- ·sent the interest of Douglass, and the proceeds of the sale of the land ·should be divided between the two in the ratio that these sums bear to ·each other. It is ordered that Douglass recover of Blount and Swilley .all costs of the Court of Civil Appeals and of this court.

*Reversed and remanded.*

### DISSENTING OPINION.

WILLIAMS. Associate Justice.—The opinion of the court, as un- ·derstood by the writer, holds that, as the effect of the assignment of one ·of the purchase money notes by Fortescue to Swilley and by him to the lumber company, the suit and judgment of foreclosure upon it by that ·company and the purchase by Douglass under such judgment, the legal title which remained in Fortescue when the original sale was made was cut off and determined; and, as a consequence, that Douglass, while re- fusing to pay the other notes and pleading limitation against one of them, may hold the land subject alone to the lien securing the note which is not barred. Not being able to assent to this view of the law of the case or to the result to which it leads, the writer regards the question as of sufficient importance to justify a statement of the reasons for his dissent.

That the original contract of sale was executory in form and left in the vendor, Fortescue, the legal title, with the consequent right, upon refusal

of the vendee to pay the purchase money to rescind and reclaim the land as a means of enforcing his rights against the defaulting purchaser, is nowhere disputed. The opinion of the majority is not understood as holding that the assignment of one of the notes at once put the matter in such an attitude as to forever extinguish this right, or that under no circumstances could the holder of the legal title afterwards exercise it in case it became necessary for his protection. That such was not the effect of the assignment alone is put beyond question by former decisions of this court.

In White v. Cole, 87 Texas, 500, a sale of land was made, the vendee, for the purchase money, paying $1000 cash, assuming two notes owed by the vendor to a third party, and giving to the vendor a note for $1000, the deed reserving a lien to secure purchase money. This note was assigned by the vendor to Mrs. White, and, after it became barred by limitation, the vendor also conveyed to her all his right, title, and interest in the land, Cole, the purchaser, having previously paid the assumed notes. It was held that the right to rescind, upon the purchaser refusing to pay the $1000 note and pleading limitation against it still existed, and that Mrs. White, holding both the note and the legal title, could recover the land. It will be noted that part of the claim for purchase money was first assigned to the party whose notes were assumed by the purchaser, and part was retained by the vendor and afterwards assigned to Mrs. White. The necessary meaning of this decision, therefore, is that assignment of all or parts of the claim for unpaid purchase money, even to different persons, does not constitute such a final and irrevocable affirmance of the sale as to destroy forever the power of the vendor or of a holder of the unpaid notes and of the legal title, to assert it, whenever, by the refusal of the purchaser to pay the purchase money, it is made essential to the protection of those entitled to look to the land for enforcement of their rights.

In Crafts v. Daugherty, 69 Texas, 477, a decision quite as pertinent to the present discussion was made. There was a sale of land for $1500, $200 cash and the balance on time. To secure such balance the purchaser, at the time he received his deed, executed to the vendor a mortgage with power of sale, thus making the contract executory. He paid all but $600 and gave a note for that sum and a new mortgage in lieu of the first one to secure it. The vendor assigned the note to a third party and afterwards caused a sale under the mortgage to be made for the benefit of the assignee, and the latter purchased the land at such sale. The vendor then executed to the assignee a conveyance of the land. In a contest between the original purchaser and the assignee of the note, it was held that the sale under the mortgage was void, for reasons unimportant here, and that the purchase thereat by such assignee passed no right; but that the conveyance from the original vendor to the assignee vested in him the legal title which had always remained in the vendor and which could only be defeated by the original vendee by payment of unpaid purchase money.

These decisions lead to the proposition that when all of the purchase money notes and the legal title are held by the same person, and the vendee refuses to pay the purchase money, such holder still has the right of rescission, notwithstanding the fact that the ownership of the notes and of the legal title may have been previously separated and vested in different persons. The opinion of the majority of the court so holds, but states the doctrine to be that the assignment of one of the notes puts it beyond the power of the vendor to reclaim the land; but that if he reacquires the assigned note or conveys the legal title to the holder of it, the right is revived. It seems obvious to the writer that if this right or title ever passes for a moment from the vendor, a resulting right at once vests in the vendee, for these two are the only ones who have any character of title. That which remains in the vendor is undoubtedly a species, and an important species, of title. If it passes from him it vests in some other person and that other person must be the only one, besides the vendor, having any character of title, the purchaser. That it does not vest in the assignee of the note by the assignment thereof, numerous decisions hold. If it has once passed from the vendor, his subsequent conveyance to the assignee can not invest him with it, nor could a reacquisition by the vendor of the note restore it to him, for the plain reason that in neither instance would it be in the person undertaking to convey. The truth is that it is always in the vendor until the vendee has performed the condition upon which it is to vest in him, or until the vendor has conveyed it, or until he has in some way finally estopped himself from asserting it. The ways in which he may estop himself are discussed in Gardener v. Griffiths, 93 Texas, 355. It is undoubtedly true that certain conditions must exist to entitle its holder to assert and enforce it, but this by no means proves that it has ever passed from him or ceased to exist. It is also true that by the assignment of a part of his claim for the purchase money, the vendor imposes certain limitations on his right to assert his legal title by rescinding and taking back the land, and the extent of these limitations is one of the principal questions in this case.

Neither Fortescue nor Blount ever reacquired the assigned note, but in this action Blount proposed and was permitted to do that which, in the judgment of the writer, he had the absolute right to do, and which, for all the purposes of the case, was equivalent to such a reacquisition, viz., to pay the note to those entitled to receive the money upon it and thus to disincumber his title and make perfect his right against the purchaser refusing to pay the purchase money.

In order to sustain this proposition, it is important to ascertain definitely the attitudes and rights of each of the parties as they existed after the assignment of the note to Swilley, and this may be sufficiently done from the decisions of this court.

The vendee acquired no new rights. The contract of sale remained executory, and under it he could only acquire title by payment of all the notes. The rights acquired by the assignee of the note were subtracted

wholly from those which resulted to the vendor from the contract of sale and added nothing to those of the vendee. White v. Cole, Crafts v. Daugherty, supra; Russell v. Kirkbride, 62 Texas, 456. It is true that, in any rescission by the vendor, he would have to protect the vendee against the assigned note, but, as will appear further on, such protection would result from the only exercise the vendor could make of his right of rescission.

The assignee of the note obtained by the transfer the right to collect the amount of it, and, as security, a lien on the land coequal with that of the vendor, securing the notes retained by him. It is unnecessary here to consider any question of priority of lien, as this opinion does not depend on any such question. That such was the extent of the right of the assignee is established by the decisions of this court. Russell v. Kirkbride, supra; Stephens v. Matthews, 69 Texas, 341; Loan Co. v. Beckley, 93 Texas, 273.

From this statement of the rights of the vendee and of the assignee, it is obvious that, as the vendor by his assignment of one of the notes passed none of his original rights to the vendee, they remained after such assignment the same as they were before, except as they were diminished by those conferred upon the assignee. He remained possessed of the legal title, and, as he retained some of the notes, of a lien upon the land to secure their payment, which, waiving questions of priority, was equal to that of the assignee. To speak more accurately, he had, to secure his notes, the same lien as that which secured the assigned note, for such a lien is an entirety and charges all of the notes equally upon all of the land. The legal title was held upon certain trusts for the holder of the assigned note and for the vendee, but also as a means by which the vendor might enforce the right retained by himself. The only impediment to the assertion of this legal title, upon refusal of the vendee to pay the purchase money, was the right of the holder of the assigned note to have it paid. This right, in the opinion of the writer, was demonstrably an incumbrance upon the title of the vendor, as well as upon that of the vendee, which either had the right to remove by paying off the outstanding note. It is said in the majority opinion that such a legal title is held only in trust and is not a property right in the land that could be incumbered by the transferred note. The answer is that after default by the vendee, the title remaining in the vendor becomes, as between him and the vendee—the only persons who have any title—the superior one, in fact, the legal and equitable title. This is necessarily true because the purchaser has acquired no new right in the land and the assignee of the note has acquired only a lien upon it. When the purchaser refuses to pay, the right and title of the vendor becomes paramount to all claims except the outstanding lien of the assigned note. When the vendee will not pay any of the notes for purchase money, no right of his exists to prevent rescission, except the right to be protected against personal liability on the notes, and this would be fully guarded by the vendor paying off the assigned note and then rescinding the contract; and, as the

assignee of the note has no right but to receive the amount due on it, that right is satisfied by payment; and, under such circumstances, no reason is perceived why the vendor has not the right accorded to all persons whose titles are incumbered to satisfy the incumbrances and clear their titles.

A passage from the opinion of Judge Stayton in Whitehead v. Fisher, 64 Texas, 641, will serve to illustrate the proposition that the assigned note was an incumbrance on the title of both vendor and vendee. Whitehead, the vendor in an executory contract of sale of land, had assigned one of the purchase money notes and retained the other. The case is unlike this in its facts, but the remarks of the learned judge show his views as to the effect of such a transaction and state one of the propositions on which he bases his conclusion. "Under a long line of decisions in this State, the legal title to the land remained in Whitehead (the vendor), as between himself and Fisher (the purchaser); but as he made the lien operative in the hands of Garrity & Huey (the assignees of the note) by his own contract, it must be held that this lien *was a lien upon the land and not a lien merely on the interest in the land held by Fisher.* By the transfer of the note secured by the express lien reserved in the face of the deed by which the land was conveyed to Fisher, it must be held that Whitehead impliedly contracted that whatever title he or Fisher or both had in or to the land, in default of payment of the note transferred, should be subjected to the payment of the transferred debt. In this way only could the person taking the note have the security which Whitehead had and evidently intended should pass with the transfer."

In that case, the note was assigned with the agreement that it should have priority over that retained, but that circumstance is not made the reason for the proposition quoted, to the effect that the assigned note constituted a lien upon the titles both of vendor and vendee. The agreement evidently was not determinative of that point, as it could only affect the grade and not the fact of incumbrance.

The discussion by the same learned justice of the case of Russell v. Kirkbride, supra, involves the same conception of the rights of the assignee of purchase money notes and their effect on those of the vendor and vendee. In that case, land was sold under an executory contract and the vendor assigned one of the notes, retaining others. Afterwards, he and the vendee rescinded the contract without consulting the assignee. The opinion says: "The vendee, under such conveyances, can acquire title to the land only by payment of the purchase money, and the fact that one or all the notes which he may have executed has been transferred to a third person by his vendor in no manner affects his interest, right, or title in the land. Nor does the assignee or indorsee of a note given for land, by the fact that he becomes the holder of a note secured by lien, acquire any title or possessory right to the land for which the note was given. In such case, the lien which the vendor had to secure the note, and the right to enforce it, passes with the note to any one

who becomes its legal holder.   A vendor, however, may defeat his right to annul such a contract *to the prejudice* of another to whom he has transferred notes given to secure the purchase money," etc.

When a vendee, having only the right to obtain title by payment of purchase money, has failed and refused to perform that condition, and the assignment of the note has created no new right in him, and the assignee has only a lien upon the land to secure payment, it may be asked: Upon whose title is such lien an incumbrance, unless upon that of the vendor; and, if upon that, why has not the vendor the absolute right to take up the incumbrance?

It will be noticed that Judge Stayton does not say that such a contract may not be rescinded at all, but that it may not be rescinded to the prejudice of the assignee.  If the assigned note be paid, a rescission, whether by agreement between the vendor and vendee, or by the act of the vendor alone, prejudices no right of the holder of such note.  If the vendor and vendee should agree upon a rescission of such a sale, with one of the notes outstanding in the hands of another, their action would not be allowed to prejudice his right, and he could enforce it by subjecting the land in the hands of the vendor; but the rescission would be effectual as against everyone else, and, when the vendor paid the debt due to the assignee, his right would be satisfied.  This seems self-evident and is recognized throughout the opinion last quoted from.  If so, why is it not equally true that the vendor, when, by reason of the refusal of the vendee to pay any of the notes, he has, as against such vendee, the right of rescinding by his own action, may do so by paying off the outstanding note?  If it be suggested that it is not his obligation but that of the vendee, the answer is furnished by the language of Judge Stayton quoted above, that by assigning it he has made it an incumbrance on his title, from which it follows that he is entitled to take it up in order that he may disincumber that title, and that by so doing and rescinding the contract, he relieves the vendee, as he is bound to do, of his liability upon it as well as upon other notes not assigned.

This right of redemption from the lien of the assigned note has been discussed, perhaps, at undue length, but it is the point upon which the case hinges.  For if it existed before the suit, judgment, and sale under which Douglass bought, it was not taken away by those proceedings, because Fortescue was not a party to them.  The opinion of the majority holds that the holder of the Swilley note had the right to sue the maker of it and foreclose against him the lien on the land and sell it out, and thereby cut off the legal title and the right of rescission.  The holder undoubtedly had the right to obtain judgment against the party liable on the note and to sell any interest he had in the land.  Whether or not it was correct practice for the court to permit a foreclosure of a lien which, as an entirety, secured other notes held by a person not a party to the suit, if that fact was made to appear, may be doubted.  That, however, is a mere question of practice which need not be dwelt upon.  The proceedings were valid as between the parties to them and still bind each as to

the others. But no right which Fortescue had was taken away or impaired by them, for the reason that he was not before the court and no right of his could be put in issue. It is conceded that Fortescue's lien was not thereby affected or impaired. Why should it be held that another right more important for his protection, that is, the right to redeem and assert his title, was taken away? It is conceded that the assignment of the note was not an affirmance of the contract of sale which precluded a rescission if the vendor could get back the assigned note. It is believed that he had the absolute right to get it back by redeeming it from the assignee, and that is what he offered and was permitted by the trial court to do. If this right departed from him in the judicial proceedings, it was by acts done in his absence by others. In other words, while he has not affirmed the sale, others have done it for him through proceedings in court in which he had no hearing and opportunity to set up his rights. If it be said that by assigning the note he empowered the assignee to proceed upon it and thereby put an end to his title, the answer is that the right conferred on the assignee was simply that of enforcing the lien and collecting the note by proper proceedings, and not to preclude his rights by a judgment of foreclosure to which he was not a party. If the assignee was thus empowered to terminate his right of redemption, no reason can be given why he could not equally destroy or impair his lien. It is true, he never assigned the whole of the debt secured by the lien; but it is equally true that he never parted with his title. The lumber company foreclosed upon and Douglass bought no right of Fortescue. There passed to Douglass by his purchase only the title of the defendant in the suit, the original purchaser, with such additional right as the plaintiff therein could impart by his foreclosure against such defendant. The foreclosure could not comprehend any right of one not a party. Robertson v. Guerin, 50 Texas, 323; McDonough v. Cross, 40 Texas, 251; Delespine v. Campbell, 45 Texas, 628. This so called foreclosure was, as against Fortescue and Blount, no foreclosure at all.

By his purchase, Douglass could acquire, as against Fortescue, no right not held by those under whom he purchased, the plaintiff and defendant in the proceeding. The plaintiff had only a lien on the land, and, as the foreclosure of it was ineffectual as against Fortescue, it remained, with respect to him and his rights, no more than a lien. Consequently, when the rights of Douglass are compared with those of Fortescue, the former, as purchaser under the lumber company, the owner of such debt and lien, is to be regarded only as purchaser of an interest in it, and this merely by subrogation to a part of its right, because, as against Fortescue, the foreclosure fails. As defendant in the suit, the original purchaser had no more than the right to acquire title by paying the purchase money. Douglass acquired only this right from him, with this difference: that, as the lumber company was the holder of one of the notes for purchase money and would be estopped in Douglass' favor from setting it up against him, he could have obtained full title to the land

by paying off the other notes. This he was allowed the opportunity and declined to do. In this he ignored the fact that Blount, through Fortescue, still had the legal title to the land, with the right, as the writer contends, of removing the incumbrance of the outstanding note, leaving Douglass with no title.

That Douglass, by his purchase, acquired, as against Fortescue, only an interest in the note and lien held by the lumber company, and the right of the defendant in that action to pay for the land and thus obtain title, necessarily results from the fact that those rights were all that the parties to the suit possessed. The case is easily distinguishable from those cited in the opinion, in which the vendor holding the legal title, as well as the lien for the purchase money, himself sued and foreclosed the latter. Gardener v. Griffiths, 93 Texas, 355; Thompson v. Robinson, 93 Texas, 170; Foster v. Powers, 64 Texas, 250. Here the plaintiff who sued to foreclose never had any character of title to the land, but the title which Blount asserts was in another and could not be cut off by any judgment to which he was not a party.

It is said in the opinion: "Redemption by Blount would impose upon Douglass the burden of paying the entire judgment under which he purchased the land as well as the notes held by Blount himself, or to surrender his right acquired from the original vendee and from the assignee of the note and receive alone that which he paid." Not at all. Blount's whole suit could have been defeated by payment of the notes held by him, the holder of the other note being estopped, by the judgment to which he is privy, to assert against Douglass any claim to the land. That judgment can be disregarded only by Blount, whose grantor was not a party to it. Blount can not redeem and still enforce against the land any claim for the purchase money, because he can only redeem in the assertion of his title to the land, and his right of rescission; and the assertion and enforcement of such right at once discharges all claim for purchase money. In such rescission, he pays off the outstanding claim for money against the land and leaves no charge against it. This answers another question raised by the opinion, viz: "If the owner of the assigned note could not compel the trustee (the original vendor holding the legal title in trust) to execute the trust and assert the title in execution of the trust, then by what rule can it be held that the trustee could compel the beneficiary (the assignee of the note) to assign and transfer its debt to him for his own benefit?" The difference between the holder of the legal title, also holding notes for purchase money, to be protected by its use, and the assignee of one of the notes, having only a lien on the land, is deduced from the decisions already referred to. The holder of the title has the right to discharge it of incumbrances, while the purchaser of the note did not buy with it any title to the land, and therefore has no right to have it conveyed to him.

An effect of the decision is to permit Douglass to defeat part of the purchase money by the plea of limitation. If an original purchaser under such a contract, when sued upon the notes, should set up such a

defense, numerous decisions of this court hold that the vendor might thereupon fall back upon his legal title and recover the land. Now, it is only by virtue· of his acquisisition of the right of such purchaser that· Douglass is entitled to plead limitation. The right which he acquired from· the lumber company was only an interest, by subrogation, in its· debt and lien, which, as held by the opinion, is only co-ordinate with· that asserted by Blount, and, as a part owner of it, he could not assert this defense. Columbia Ave., etc., Co. v. Strawn, 93 Texas, 48.

There is no doubt that Douglass, as the successor of the original purchaser, had the right to plead limitation against the note, but in so doing, he did an act which would have subjected such purchaser, if done by him, to a judgment for recovery of the land.

The reason why one purchasing such a title should acquire all the rights and be subject to none of the obligations of him whose rights he purchased is not perceived.