## J. H. CATLIN v. W. H. BENNATT ET AL.

1. VENDOR AND VENDEE—TRUST AND TRUSTEES—LIEN.—A vendor of lands, who has executed his bond for title, on payment of the purchase-money, has placed the purchaser in possession, and has transferred or collected the notes for the purchase-money, retains the legal title simply as trustee, and has no interest in the land subject to execution. His creditor, who attaches land in this condition, in which the debtor has no interest in fact, acquires no lien, unless it be by virtue of the registration laws.

2. NOTICE—LIEN—PURCHASER—STATUTES CONSTRUED.—Under the registration laws of this State, (Paschal's Dig., arts. 4988, 4989,) unless title bonds are recorded, they are void as to creditors of the vendor who acquire liens without notice, and as to subsequent purchasers without notice.

3. TRESPASS TO TRY TITLE—NOTICE—PURCHASER.—W sold land to P, giving a bond for title, and taking notes for purchase-money. The bond was never recorded. W transferred the notes, and P went into possession, and by tenant was in possession, when an attachment, issued in a suit by C against W, was levied on the land; under that attachment proceeding, the land was sold and C became the purchaser jointly with his attorney, S. Afterwards, suit was brought by the holder of the purchase-money notes against P, who died during its pendency. In that proceeding, judgment was obtained against P's estate, the lien foreclosed, and land purchased by B at sale under the foreclosure. In trespass to try title, brought by C against B for the land: *Held*—

1. The failure to record the bond for title did not affect the validity of the title purchased by B at sale under foreclosure, in view of the fact that S, the attorney of C, who bought under the attachment proceeding, was familiar with the transaction between W and P.

2. B's title was not affected by the fact that the inventory of P's estate, returned before the inception of the attachment proceeding, contained no mention of the land, nor by the declarations of the heir that he did not claim the land, and that P had abandoned the land, and declined to pay the balance due.

3. Even if S, who was jointly interested with his client C in the purchase, had not been familiar with the character of P's interest, a notice, which was given at the sale under attachment, of the character of P's interest, after C had bid, but before the bids were closed, was sufficient to charge C with notice, and to supply the defect in B's title, resulting from a failure to record the bond for title.

4. The fact that the bond from W to P was for land, including W's homestead, and that it was not acknowledged by W's wife, could not avail C, who could claim only such interest as he himself had purchased at forced sale.

5. Notice of a defect in the title to property sold under attachment at public sale, is sufficient if given at any time before the bids are closed.

4. TRESPASS TO TRY TITLE—PLEADING.—Under the plea of not guilty, the defendant, in an action of trespass to try title, may set up any defense applicable to the action, but he cannot, without some further plea, obtain affirmative equitable relief.

ERROR from Austin. Tried below before the Hon. Livingston Lindsay.

This suit was brought in trespass to try title by J. H. Catlin against parties in possession. Bennatt, who claimed that the defendants were his tenants, was made a party defendant, and pleaded not guilty, the statute of limitations, and suggested improvements made in good faith.

Both parties claimed title from Thomas B. White, the defendant, under a sale made by said White to J. P. Perkins, on the 25th of October, 1859. Perkins executed several notes for the purchase-money, and White gave bond for title, a vendors' lien being reserved in the notes and bond. Two of the notes, before due, were, in due course of trade, transferred to F. A. Effinger, for another tract of land, and by him to Ema C. Henderson. At the Spring Term, 1867, of the District Court of Washington county, Ema C. Henderson filed suit upon two of these notes, against Perkins and White, and at the April Term, 1867, Perkins filed his answer, setting out at length the bond and the notes. Perkins died pending the suit, and his widow and administratrix, M. A. Perkins, was made party defendant, and judgment rendered on the 23d of April, 1869, foreclosing the vendors' lien, which was duly certified to the County Court of said county, for observance, and the land sold and bid off by C. R. Breedlove, plaintiff's attorney, and by him conveyed to Bennatt, the then owner of the judgment. The evidence tended to show that Perkins

went into possession on 1st January, 1860, after the purchase, and that he, and those claiming under him, were in possession from that time up to the trial below, and at the time of the levy of the attachment under which the plaintiff in error claimed.

On the 14th day of May, 1868, G. W. Crawford sued out an attachment, against Thomas B. White, and had it levied upon the land in controversy. After the suit of Henderson upon the notes was filed, there was a judgment and sale by execution, and the plaintiff in error, Catlin, purchased the land for the sum of $87.50, the judgment being for $2,083.37, besides costs. There were two tracts, one of 553 acres and one of 524 acres, for which Perkins paid over $15,000. Swearingen was the attorney for Crawford, and owned one half of the judgment. There was evidence that he went to the sale with Catlin, and advised him to purchase.

A jury was waived, and judgment was rendered for defendant, and plaintiff sued out a writ of error.

*P. H. & J. T. Swearingen,* for plaintiff in error.—The contract between White and Perkins, which, for mere convenience, we will hereafter call a "title bond," bears the signatures of Thomas B. White and Margaret N. White, and of A. T. Oliver and James McPhail, as witnesses. It was never acknowledged by either of the obligors, and no reason given for the omission, but was authenticated for record by James McPhail on the 9th of June, A. D. 1871, eleven years, seven months, and fourteen days after its execution, and was recorded in Austin county, June 17, A. D. 1871, more than seven months after the registration of the plaintiff's deed.

In this connection, we submit an inquiry into the rights and liabilities of the parties respectively, under the terms of this contract; for it is the foundation of what the defendant in error denominates his "equities."

The first move towards the consummation of the contract,

evidenced by this title bond, devolved upon Perkins, the obligee. He was to pay the notes in the order of their mention. Until this prominent material condition precedent was performed, Perkins had no right, either vested or contingent; could not enforce a specific performance from White, and White was not required to tender him " good and sufficient title."

Perkins, upon the payment of the five notes, had a right to enforce a specific performance of the title bond, either to require " good and sufficient title," or recover upon the liability "nominated in the bond," or to abandon the purchase altogether.

Upon the refusal of Perkins to pay the notes, White had a right to enforce specific performance, by tender of "good and sufficient title," or to consider the contract abandoned, from the fact of the refusal of Perkins to pay the notes; and hence, the right to sell the land mentioned to any one else, after such overt acts on the part of Perkins as indicated an intention on his part to abandon the contract. This principle is announced by this court in Daniel v. Hill, 23 Tex., 572; Howard v. Davis, 6 Tex., 174; Whiteman v. Castlebury, 8 Tex., 442; Todd v. Caldwell, 10 Tex., 236; Browning v. Estes, 3 Tex., 474; Dorn v. Dunham, 24 Tex., 376.

The legal title to the land remained in White throughout. Of this legal title he had never divested himself, by the execution of a deed, and the taking of promissory "notes secured by vendors' lien."

In the entire contract, there is not one single feature of that mere "creature of a court of equity," a vendors' lien. There is no element of trust, such as has been declared to "be protected against the operation of the registration laws," in Oberthier v. Stroud, 33 Tex., 524.

In case of Hecht v. Spears, 29 Ark., 229, reported in 11 Am. Rep., 784, it is said: "The lien of a vendor for the purchase-money, says Story, J., in Gilman v. Brown et al., 1 Mason, 192, is not of so high and stringent a nature as that

of a judgment creditor, for the latter binds the land according to the course of the common law; whereas the former is a mere creature of a court of equity, which moulds and fashions according to its own purpose. It is, in short, a right which has no existence until it is established by a decree of a court in the particular case, and is then made subservient to all the equities between the parties, and enforced in its own peculiar manner and upon its own peculiar principles. It is not therefore an equitable estate in the land itself, although sometimes that appellation is loosely applied to it."

"But if the vendor has merely given a bond for a deed, the lien he has for the purchase-money is treated as a mortgage." (Wash. on Real Prop., 3d ed., vol. 2, p. 91, and cites Graham *v.* McCampbell, Meigs, 53; Anthony *v.* Smith, 9 Humph., 508.)

And this court, in the course of an elaborate opinion, rendered by Judge Gray, in White, Smith and Baldwin *v.* Downs, *et al.*, 40. Tex., 225, said: "The vendors' lien, however, properly understood, is not in all respects the same as an express lien, often reserved in deeds of conveyance for payment of purchase-money, nor as strict mortgages or deeds of trust, nor yet as the security held by a vendor who has only given a bond for title."

This we regard as conclusive, and, upon its authority, we say, the title bond in the case at bar did not carry with it the vendors' lien, nor did it vest in Perkins an "equitable estate in the land." His right to claim a vested estate or an equity in the land mentioned, depended upon the payment of the notes; an act, the performance of which, by the terms of the bond, he had taken upon himself, as a necessary prerequisite to the assertion of even an equitable estate in the land.

*Hunt & Holland* and *Ben. F. Harris,* also for plaintiffs in error.

*Giddings & Morris,* for defendants in error.

GOULD, ASSOCIATE JUSTICE.—A vendor of lands, who has executed his bond for title, on payment of the purchase-money, has placed the purchaser in possession, and has transferred or collected the notes for the purchase-money, retains the legal title simply as trustee, and has no interest in the land subject to execution. His creditor, who attaches land in this condition, in which, in fact, the debtor has no interest, acquires no lien, unless it be by virtue of the registration laws. (Blankenship v. Douglas, 26 Tex., 228; Freem. on Judg., sec. 366.) By that law, unless title bonds are recorded, they are void as to creditors of the vendor who acquire liens without notice, and as to subsequent purchasers without notice. (Paschal's Dig., arts. 4988, 4989; Grace v. Wade, 45 Tex., 522.) The evidence in this case justifies the conclusion that White made his title bond to Perkins, and, prior to the levy of the attachment, had either collected or transferred the purchase-money notes, and that, therefore, he, at that time, had no interest in the land subject to attachment. It further appears, however, that this bond was not placed on record; and it is claimed that Catlin purchased without notice of the sale to Perkins; and that, whether he had notice at the time of his purchase or not, he is protected through the rights of the judgment creditor, who, it is claimed, acquired his attachment lien without notice.

In so far as the question of notice, actual or constructive, involved issues of fact, those issues must be presumed to have been found in favor of defendants; and, unless the evidence is insufficient to support such a finding, the judgment will not be disturbed, except there be some other valid ground for doing so. Bearing this in mind, we cannot say that the evidence was insufficient to show such possession by Perkins, and others under him, as to give notice to both creditor and purchaser, or any one seeking to acquire a right in or to the land. Perkins went into possession in 1860, and made improvements. Perkins sold to Buster, who went into possession; and when this sale was rescinded, Bennatt testifies that

he, as agent for Perkins, had possession of the land, by tenants, at the time the attachment was levied. In 1866 the land was occupied under Perkins, who, at some time, removed from the place a dwelling-house that he had built. It seems reasonable to conclude, from the evidence, that, after 1860, the land was occupied continuously by parties who obtained their possession under Perkins. On the other hand, Perkins was dead some eight months before the attachment was levied, and the inventory of his estate contained no mention of this land; and there was evidence that his son said that the estate did not claim the land, and that Perkins himself declined to pay the balance due by him, and abandoned the land, because it was not worth the balance due. Certainly, if the land was held by tenants under Perkins, his death would not change their relation as tenants. That the land was not inventoried, might be explained by the fact that it was not regarded as worth the purchase-money due thereon; and it might still be true that it was occupied by tenants placed there under Perkins and his agents. At most, the evidence on this point is conflicting, and not sufficient to support a verdict that there was such possession as to give notice of the sale to Perkins, or that the transaction itself was so notorious as to authorize the inference of notice. But, aside from this view, there is evidence that Swearingen, the attorney of the attaching creditor, and jointly interested with that creditor to the extent of half of his claim, was familiar with all the transactions between White, Perkins, and Buster. Under these circumstances, his knowledge would constitute notice to the creditor.

So there is evidence that, at the time of the sale under the judgment enforcing the attachment lien, notice was given of the Perkins claim; and whilst one witness says that this notice was given after the bids were closed, he afterwards describes it by saying that it was not given till Catlin's bid was made; and this corresponds with the description given in Swearingen's testimony, that Catlin bid ten cents an acre, and Harris then forbid the sale. The evidence on this point

is certainly sufficient to support a finding that the notice was given before the bids were closed, and that was in time.

Our examination of the evidence satisfies us that the court did not err in holding (as we must assume that it did) that both the attaching creditor and the purchaser had notice of White's sale to Perkins, and that, by reason thereof, the failure to have the bond evidencing the sale recorded was supplied. Catlin, therefore, did not, by virtue of the registration law, take any other or better title than White had subject to execution; and as White had no interest subject to execution, Catlin took no title whatever.

The view which we have taken of the case renders it unnecessary for us to follow the plaintiff in error in the discussion of other questions. Whether the suit brought by Mrs. Henderson was notice of the title bond to Perkins, whether the judgment rendered in that suit was valid or not, and whether there was a valid sale by the administrator of Perkins's estate, all become immaterial questions. If the evidence was sufficient to show that the plaintiff had no title, it was unnecessary for the defendants to show that the title was in them. It was, however, necessary for defendants to establish the title bond of White. It was objected to the introduction of this bond, that it was not acknowledged by Mrs. White, who joined in signing it, for the reason, as stated in the bond, that the land sold, included the homestead. There is no question affecting Mrs. White's homestead rights in this case. The plaintiff's claim was under an attachment, and the title bond of White alone was sufficient, as to so much of the land as was subject to attachment; besides, the bond was for an amount of land largely in excess of the homestead exemption, and was admissible as to the excess. The objection, that it was evidence of an equitable title, and was inadmissible, under the plea of not guilty, is groundless. The rule laid down in Ayres *v.* Duprey, 27 Tex., 604, is, that under the plea of not guilty, the defendant, in an action of trespass to try title, may set up any defense applicable to that action, but cannot, without some further

plea, obtain affirmative, equitable relief. Certainly, an equitable title may be set up, without being specially pleaded. In this case. however, the bond was admissible, as evidence that the plaintiff had no title on which to sue.

We are of opinion that there is no error in the judgment, and it is accordingly affirmed.

AFFIRMED.