A. J. BROTHERTON v. ANDERSON, EVANS & WARD.

ided January 16, 1902.

**1.—Sale of Land—Rescission—Vendor's Lien Notes.**

An agreement between the vendor and vendee to rescind the sale of land upon the surrender by the former of the latter's notes given for the land, is not consummated where the notes, which the vendor had transferred to a third party, are not procured back and surrendered, although the vendor is in possession of the land.

**2.—Same—Superior Title Not Subject to Execution.**

The vendor having transferred the lien notes was then the holder of the superior legal title merely as trustee for the owner of the notes, and had no interest in the land subject to execution.

**3.—Same—Lien Owner's Right to Foreclose—Rescission.**

Where a vendor's lien note has been purchased for value and without notice the holder's right to have the lien foreclosed can not be defeated by a rescission of the sale of the land made by the grantor and grantee.

**4.—Same—Notice of Lien—Estoppel.**

Where the purchaser of a vendor's lien note is not shown to have been present at a sale by another of the land under execution, or to have had any reason to believe that the execution purchaser did not know of his claim, he is not estopped from asserting his lien against such purchaser.

Appeal from Leon. Tried below before Hon. J. M. Smither.

*Dean & Dean,* for appellant.

*Thomas B. Greenwood* and *William Watson,* for appellees.

GARRETT, CHIEF JUSTICE.—This action was brought by the appellees against the appellants for recovery upon two promissory notes given to one H. Levy in part consideration for land and for foreclosure of the vendor's lien. The appellants A. J. Brotherton and G. W. Reynolds were sued as the makers of the notes and the others as asserting some claim to the land. The appellant Allen Mills claimed the

land as a purchaser at a sale under an execution against Levy, contending that the sale by Levy to Brotherton and Reynolds had been rescinded; and the other appellants were the tenants of Mills. Trial was had before the court without a jury and the judge filed conclusions of fact and from them and the statements of facts the following statement is made:

On July 21, 1893, H. Levy sold to the appellants Brotherton and Reynolds 213 acres of land for which he executed to them a deed with general warranty of title. The consideration was $1000, evidenced by four notes for $250 each, due respectively December 1, 1894, December 1, 1895, December 1, 1896, and December 1, 1897, which were mentioned in the deed, the two last being the ones sued on. The vendor's lien was not reserved in the deed but it was expressly reserved in each of the notes. On March 12, 1895, Levy indorsed the four notes in blank and delivered them to one L. A. Beddingfield, together with other notes as collateral security for his note to Beddingfield for $1890; and on March 12, 1896, renewed his note to Beddingfield and the collateral remained with him. In October, 1896, Levy, who was a general merchant in Jewett, failed in business and executed a deed of trust to L. D. Waltman conveying his stock of goods, notes, accounts, etc., for the benefit of certain preferred creditors, among whom were Beddingfield and E. Goodman, a sister. No mention of the note of Brotherton and Reynolds given for the land or of the land was made in the deed of trust, which contained a list of notes and accounts and property transferred by it. Early in 1897 the trustee conveyed the assets of Levy to E. Goodman, and on March 12, 1897, she took up the note of Levy to Beddingfield for $1890 by the execution of her note for the same amount due one year after date, and the notes of Brotherton and Reynolds remained in Beddingfield's hands as collateral security, E. Goodman making a written transfer thereof upon a list of the notes left for that purpose. In March, 1898, E. Goodman renewed her note to Beddingfield as in 1897. In January, 1899, E. Goodman sold out to Anderson, Evans & Ward, and as a part of the transaction they paid her note to Beddingfield and bought all of the collaterals held by him, including the Brotherton and Reynolds notes.

In January, 1898, Brotherton went to Waltman, who was acting as the agent of E. Goodman, and proposed to surrender the land for the notes. Waltman informed him that the notes had been transferred to Beddingfield as collateral security, but promised to redeem and surrender them and take a conveyance of the land in satisfaction thereof. Waltman then took possession of the land, and when the appellees got the notes from Beddingfield possession was given to them. The trial judge found that there had been merely an agreement, never consummated, for a rescission, conditioned upon the surrender of the notes, and that there had been no rescission of the sale of the land. The finding is approved as supported by the evidence. The deed from Levy to Brotherton and Reynolds was filed for record October 26, 1896, and

duly recorded.  Anderson, Evans & Ward acquired the four notes in good faith without knowledge of any attempt to rescind the sale of the land or to cancel the notes, and without knowledge of any infirmity in them.  The notes were never out of the hands of Beddingfield from March 12, 1895, to March 30, 1899, when he delivered them to appellees, and he had no knowledge of any attempt to rescind the sale, and never assented to any cancellation or surrender of the notes.

The appellant Allen Mills claims title to the land as above stated through a sheriff's sale under an execution against Levy.  On November 11, 1898, L. Puster & Co. recovered a judgment in the District Court of Leon County against H. Levy for $677.91, of which an abstract was duly filed in the office of the county clerk of Leon County on January 13, 1899, and was duly recorded and indexed.  Execution was issued on said judgment, and on the first Tuesday in November, 1899, the land in controversy was regularly sold by the sheriff of Leon County and purchased by the appellant Allen Mills for $282.50 which he paid and a deed was executed to him therefor by the sheriff on November 7, 1899, conveying all the title held by Levy on January 13, 1899.  Anderson, Evans & Ward were in possession of the land at the time of the sale. On the day of the sale Evans was in the town of Centreville, the county seat, but it does not appear that he was present at the sale.  Mills sent Evans a message on that day prior to the sale, which Evans received, that he would give him $25 not to bid, provided no one else bid against him.  It does not appear that Evans sent any reply to the proposition. Mills had no actual knowledge of any claim of the appellants upon the land until he had bought and paid for it.

There having been no rescission of the sale of the land by Levy to Brotherton and Reynolds, and Levy having transferred the notes to Beddingfield, he became merely the holder of the legal title as trustee for the benefit of the holder of the notes and had no interest in the land subject to the lien of the judgment in favor of L. Puster & Co. against him, or subject to sale under execution.  The beneficial title subject to sale under execution was in the vendees and not in the vendor with a lien reserved.  Willis v. Somerville, 3 Texas Civ. App., 509; 93 Texas, 677; Catlin v. Bennett, 47 Texas, 165; McCamley v. Waterhouse, 80 Texas, 340; Stephens v. Motl, 82 Texas, 81.  As the appellant Mills must recover upon the strength of his own title the decision of the case might be rested upon the fact that there was no rescission of the sale, but it further appears that the appellees acquired title to the notes without knowledge of any rescission or any attempt or intention to rescind, and were the owners thereof in good faith for a valuable consideration. Such being the case, no rescission could have been made that would have defeated the right of the appellees to have a vendor's lien foreclosed for their payment.  Russell v. Kirkbride, 62 Texas, 455.  When the abstract of judgment was recorded, the deed from Levy to Brotherton and Reynolds was of record showing that the notes had been executed for the purchase money of the land, and at the time of the sale the appellants

were in possession. So there was full constructive notice to Mills of the lien of the purchase money notes, and it was not necessary that the notes and the transfer thereof should have been recorded.

As above stated, the finding of the trial judge as a question of fact that the sale had not been rescinded is sustained by the evidence and will not be disturbed. The notes remained with Beddingfield as security for the note first of Levy and afterwards of Goodman for which Levy's note was surrendered, and were never out of his hands until they were sold to the appellees and were never discharged by a rescission of the sale, hence the second assignment of error must be overruled. Even if there had been a rescission the appellees would be entitled to have their lien foreclosed for the full amount of the note, since they are purchasers and owners thereof in good faith and are not seeking to enforce them as collateral security, in which event in case a rescission had been made they could only enforce them for the amount of the principal debt. The facts do not show an estoppel against the appellees. It does not appear that Evans was present at the sale, or that he had any reason to believe that Mills did not know that his firm was claiming an interest in the land, or that he was about to purchase it without such knowledge.

*Affirmed.*

### ON MOTION FOR REHEARING.

The expression in the opinion, "As the appellant Mills must recover upon the strength of his own title," etc., as pointed out by appellants in their motion for a rehearing, is not technically correct and was inadvertently used. But it does not affect the decision of the case. The idea to be expressed was that appellees as the holders of the notes would be entitled to recover unless Mills could show that a lien had been fixed upon the property by the record of the abstract of the Puster & Co. judgment. While the questions raised by the appellants are difficult and not free from doubt, we believe that we have decided them correctly, and so overrule the motion for a rehearing.

*Overruled.*

Writ of error refused.