## KALISKI v. GRAY et al.

### No. 8391.

Court of Civil Appeals of Texas. San Antonio.

March 19, 1930.

Rehearing Denied June 11, 1930.

See, also, 8 S.W.(2d) 203.

Robt. G. Harris and Frank H. Booth, both of San Antonio, for plaintiff in error.

Don A. Bliss and John C. Wall, both of San Antonio, for defendants in error.

FLY, C. J.

The pleadings in this record are very voluminous, the case having been tried upon the

fourth amended original petition and fifth amended answers by some of the parties, as well as various supplemental petitions and answers, together with a cross-action by Don A. Bliss, one of the defendants, copies of pleadings covering 102 pages of a transcript of 166 pages.

The suit was instituted by Belle Kaliski, who will be herein called plaintiff, against C. J. Gray, Don A. Bliss, D. J. Sullivan & Co., a partnership composed of D. Sullivan, D. J. Sullivan, and W. C. Sullivan, herein identified as defendants, and is an action of trespass to try title to "all of Block 16, of the Kahn and Gray Subdivision of 230 acres of land, lying and situated in Bexar County, Texas, and out of the I. Perez Survey, No. 93, as shown by the map or plat of said subdivision, recorded in the records of maps and plats of said county, Volume 5, page 227, to which reference is here made, said land containing thirty-three acres." The cause was submitted to a jury on special issues, and on the responses thereto judgment was rendered that as to Gray and the Sullivans plaintiff should recover nothing and pay all costs, and that Don A. Bliss recover of plaintiff on his cross-action the land herein described.

■ Plaintiff claimed the land through a sheriff's deed made by virtue of an order of sale issued in the case of C. J. Gray v. Elliff, out of the Seventy-Third district court of Bexar County; said deed being dated April 6, 1915. The judgment foreclosed the vendor's lien on the land. The legal title was in Gray at the time of the foreclosure and sale. Gray was indebted to plaintiff, and had placed the Elliff notes with her as collateral, and the foreclosure and sale was made in order to place the title in plaintiff and defeat other creditors. Gray pleaded that the sheriff's deed was made to plaintiff merely as security for the debt he owed her, and that the deed was obtained by him and plaintiff in order to protect the land from seizure by other creditors. He testified to the facts alleged by him. In the face of admissions in pleadings and evidence, the jury answered that the agreement between Gray and plaintiff was not made by him for the purpose of hindering, delaying, or defrauding creditors.

When plaintiff proved that Gray held the title to the land when he sold to Elliff, and that she purchased the land at a foreclosure sale issued by Gray in a suit instituted by him against Elliff to foreclose on purchase-money notes, she developed her case, and the burden devolved on Gray to show that the sheriff had made a deed to plaintiff, which was in truth a mortgage to secure plaintiff in the debt she held against Gray.

■■ Let it be admitted that Gray permitted or induced plaintiff to purchase the land at sheriff's sale merely as security for debt,

still accompanying this purpose and design was another and more potent motive of concealing property from his creditors. After pleading that the deed was intended only to secure plaintiff and not to pass title to her, Gray alleged: "This agreement was because plaintiff well knew that there were a number of deficiency judgments against this defendant, the abstract of which were duly recorded in the judgment abstract records of Bexar County, Texas, and that it might be claimed by said judgment creditors that their judgment liens had been attached to the said land and that they should be taken in payment of the debt." That may be taken, if desired, as an indirect way of charging that plaintiff was a party to the scheme to prevent other creditors from collecting their debts, but proof of that fact would not avail Gray anything, because the law would not lend itself in any way to assist him in setting aside the fraudulent conveyance to which he was a party. He swore that the deed was taken in Mrs. Kaliski's name as security in order to prevent creditors from subjecting the land to payment of their debts. When asked why he did not take the deed from the sheriff in his own name, he said: "On account of having those deficiency judgments against me. If I had, my creditors would have come in and would have taken whatever equity I had in it." When asked his purpose in having plaintiff to take title to the land, his answer was: "My object and purpose was to try to save my equity in it and at the same time to secure her." It is well settled that a contract based on several considerations, one of which is unlawful, either under the common law or by statutory provision, is null and void. Wicks v. Comves, 110 Tex. 532, 221 S. W. 938; Edwards County v. Jennings, 89 Tex. 618, 35 S. W. 1053. The following passage is quoted and approved in Eastham v. Roundtree, 56 Tex. 110, which is applicable to the facts of this case: "As a general rule, a contract or agreement cannot be made the subject of an action if it be impeachable on the ground of dishonesty, or as being opposed to public policy—if it be either contra bonos mores, or forbidden by the law." Transfers made with intent to delay, hinder, or defraud creditors are denounced by statute. Elser v. Graber, 69 Tex. 222, 6 S. W. 560. The claim of Judge Bliss is dependent on the success or failure of Gray to establish his claim to the land.

Because the verdict of the jury was contrary to the undisputed facts, the judgment is reversed, and the cause remanded.

## On Motion for Rehearing.

COBBS, J.

The testimony in this case shows that Judge Gray possessed and held actual possession of the land for more than ten years, claiming the land as his own, and there was

never a word or suggestion that Mrs. Kaliski claimed to own the land beneficially.

Bliss made to Judge Gray the first loan on the land of $1,000, and then made him a second loan of $446, and still later made him a loan of $446 in order to help him out.

Gray associated Mrs. Kaliski with him in the purchase of the Culebra ranch, west of the city; Gray putting into the purchase $7,000 in cash, and Mrs. Kaliski $4,000 in cash, but Gray had given his notes for the balance of the purchase price of the ranch.

Gray had an opportunity of disposing of this Culebra ranch by selling it largely on time at a profit. It was agreed to pay Mrs. Kaliski $2,000 cash and give her his three promissory notes, aggregating about $3,000, thus giving her a profit of $1,000 on the investment of only $4,000. In order to secure her, he gave a deed of trust on the land in controversy, then owned by him, and also other security, for the payment of said three notes that he had executed and delivered to her. He had an opportunity to sell the land in controversy to one Elliff, and she agreed to release her trust deed lien on this lien in consideration of the transfer to her of two notes, each for the principal sum of $2,000, that were executed and delivered by Elliff to Gray for a part of the purchase price of said land, together with the superior title that was retained by Gray in his deed to Elliff; that is to say, Gray transferred to her the two notes made by Elliff to him, and also transferred and conveyed to her the superior title retained by him (Gray) on the land to secure said two notes executed by Elliff. Thus Mrs. Kaliski held not only the two notes executed by Elliff, each for the sum of $2,000, but also the superior title to the land, as a security for the debt that Gray owed her.

The superior title under the law that Gray retained in his deed to Elliff to secure the payment of Elliff's two notes for $2,000 each was not subject to execution for any debt of Gray, nor was it such an interest in the land to which judgment lien against Gray could attach. Later on, because Elliff defaulted, an agreement was made between Mrs. Kaliski and Gray whereby Gray was to sue Elliff on the two notes in Gray's name for the amount of Elliff's notes, and to foreclose the lien on the land and prosecute same to judgment, at Gray's expense, and, if the land should not sell for enough to pay judgment and costs, then the land should be bid in and sheriff's deed be made to Mrs. Kaliski, and be held by her as security for the debt Gray owed her, and deficiency judgment against Elliff.

Gray procured a judgment against Elliff for the amount of said two notes, that Elliff had executed and delivered for a part of the purchase price of the land, and, having obtained a judgment of foreclosure of the lien on the land, and no one bidding at the sale except Lipscomb, who acted under instructions of Gray, and bid $1,000 for the land, which was not anywhere sufficient to pay the amount of the judgment and costs, Gray had the sheriff convey the property to Mrs. Kaliski in accordance with his agreement, and assigned to her the deficiency judgment.

It was contended that this agreement between Gray and Mrs. Kaliski, long before the judgment was rendered, was in fraud of other creditors of Gray, who had obtained deficiency judgments against him and had abstracts made thereof.

I do not see how such agreement between Gray and Mrs. Kaliski could possibly have put any creditor of his in a worse position than he was before said agreement was made and carried out, for the reason that Gray at the time said agreement was made had no interest in the land whatever subject to execution, or to which a judgment lien against Gray could attach. The superior title retained by Gray in his deed to Elliff was not subject to execution and no judgment lien could attach thereto. Willis & Bro. v. Sommerville, 3 Tex. Civ. App. 509, 22 S. W. 781; Douglass v. Blount, 95 Tex. 369, 67 S. W. 484, 58 L. R. A. 699; Traders' Nat. Bank v. Price (Tex. Com. App.) 228 S. W. 163; Von Roeder v. Robson, 20 Tex. 754; Lovejoy v. Roberts, 35 Tex. 615; Rogers v. Green, 35 Tex. 734; Robinson v. Davenport, 40 Tex. 333; Roberts v. Lovejoy, 60 Tex. 253; Bartley v. Harris, 70 Tex. 182, 7 S. W. 797.

In order for an instrument to be a fraudulent conveyance, not only must the fraudulent intent exist at the time of the execution thereof, but the intent must be coupled with a conveyance that has the effect, if permitted to stand, to hinder, delay, or defraud creditors. See Ellis v. Valentine, 65 Tex. 532; Rivera v. White, 94 Tex. 538, 63 S. W. 125; W. F. Dulaney v. Lawler (Tex. Civ. App.) 282 S. W. 321; and Ruling Case Law, p. 492, § 24. Gray testified positively it was his purpose to protect Mrs. Kaliski in her prior lien because he knew there were abstracts of judgment rendered against him which would at once attach to the land if the sheriff's deed should be made to him, and that these liens would be superior to her lien in the event the deed should be made to him. He did not desire that his equity in the land should be sacrificed absolutely, for the reason that he would still be liable to her. This did not and could not possibly constitute a fraudulent intent such as would estop Gray from showing that the sheriff's deed made to Mrs. Kaliski was a mere security for the debt that Gray owed her. Gray had paid to Mrs. Kaliski every cent he owed her, and she was trying to enforce the payment of an usurious debt that she claimed he had incurred by reason of the fact that she let him have $500 in money to be loaned

out by him for her, and which had been lost, but he paid her the sum of $25 per month for eight and a half years.

It is obvious that the agreement that was made between Gray and Mrs. Kaliski was not such a conveyance as injured any creditor whatever of Gray. The decisions all hold that the mere intention to hinder, delay, or defraud creditors can have no effect as to a conveyance, if considered alone; and that, in determining whether a conveyance is lawful or not, the intent must be coupled with a conveyance which has the effect, if permitted to stand, to hinder, delay, or defraud creditors. "No creditor can be said to have been delayed, hindered or defrauded by any conveyance, until some property out of which he has a specific right to be satisfied is withdrawn from his reach." 12 Ruling Case Law, p. 491, § 24.

I think this court erred in the following statement in the opinion: "This agreement (referring to the agreement that had been made between the said Belle Kaliski and the said Gray prior to the institution of the suit by the said Gray in his own name against Elliff) was because plaintiff (Belle Kaliski) well knew that there were a number of deficiency judgments against this defendant (Gray), the abstracts of which, were duly recorded in the judgment abstract records of Bexar County, Texas, and that it might be claimed by said judgment creditors that their judgment liens had been attached to the said land and that they should be taken in payment of the debt."

And further this court erred in its statement in its opinion that: "He (Gray) swore that the deed was taken in Mrs. Kaliski's name as security in order to prevent creditors from subjecting the land to the payment of their debts," for the reason that this is not a fair statement under the testimony. Gray's testimony was in substance that he explained to her that, if the sheriff's deed should be made to him, the judgment liens of his other creditors would at once attach to the land and be superior to her lien on the land, when, under the facts existing at the time said agreement was made between him and her, she had a lien on the land superior to any other claim, and it was his intent that she should maintain this position after the sheriff's sale should be made.

At the time this agreement was made, the said Mrs. Kaliski held the legal title to the notes which Elliff had executed and delivered to Gray, who had no interest whatever in the land that was subject to execution or to which any judgment lien could attach. Such a holding is in conflict with Willis & Bro. v. Sommerville, 3 Tex. Civ. App. 509, 22 S. W. 781; Douglass v. Blount, 95 Tex. 380, 67 S. W. 484, 58 L. R. A. 699; Rutherford v. Mothershed, 42 Tex. Civ. App. 360, 92 S. W. 1021. The agreement made in regard to the deficiency judgment hereinbefore noted was not an agreement to defraud his creditors, and so found by the jury was not to hinder, delay, or defraud such creditors. The court erred in not being bound thereby. The jury simply found that the said Gray's intention was to carry out a lawful agreement which did not and could not have the effect of withdrawing from the reach of any of his creditors property out of which any other creditor had a specific right to have his debt satisfied.

The legal title to said land was in Elliff at the time said agreement was made, and could not be utilized for the sale and the application of the proceeds thereof toward paying off and satisfying the debt that the said Gray owed Belle Kaliski, by either the said Gray or by Kaliski without getting rid of the legal title of Elliff, and the only way that could be done was by getting rid of it by foreclosure. Mrs. Kaliski might have rescinded, but no other creditor could have done so. If she had done so, she would have had the apparent legal title to the land just the same as she had the apparent legal title to the land under the sheriff's deed, under the agreement that was made between her and the said Gray; and, if Gray had requested her to pursue said course and rescind, and she had complied with such request, this transaction would have been perhaps fraudulent to other creditors.

The writer cannot give his assent to the proposition that the said agreement made between Gray and Kaliski was in fraud of creditors.

The court held as a matter of law, or as a matter of fact, that, at the time when the agreement was made between Gray and Belle Kaliski, the legal title to the land was in Gray. Beyond a shadow of doubt, the legal title to the land at the time said agreement was made was in Elliff and not in Gray; and, when the suit was brought against Elliff on the notes for a recovery of the amount thereof and for a foreclosure of the lien on the land securing the same, and this suit was prosecuted to judgment against Elliff for a foreclosure of the lien on the land, this was an affirmation of Elliff's legal title so as to preclude thereafter the assertion of the superior title held by Belle Kaliski under the transfer thereof by Gray to secure the payment of the debt he owed her. Coddington v. Wells, 59 Tex. 49; McPherson v. Johnson, 69 Tex. 485, 6 S. W. 798; and many other decisions of the Supreme Court of the state.

The question arises: Was the agreement that was made between Gray and Belle Kaliski prior to the institution and prosecution of the suit by Gray against Elliff an unlawful agreement, that is to say, an agreement in violation of the statute of frauds and perjuries?

No other creditor of Gray had any lien on the land whatever, for Gray had no interest in the land that was subject to execution or to which any judgment lien could attach.

It is the settled law of this state that, under the statute of frauds and perjuries, a mere intent on the part of grantor to hinder, delay, or defraud creditors is not sufficient to render a conveyance of property a fraudulent conveyance. "The intent must be coupled with a conveyance, which has the effect, if permitted to stand, to hinder, delay or defraud creditors." Ellis v. Valentine, 65 Tex. 547. "In order to make even a voluntary conveyance void as to creditors, existing or subsequent, it is indispensable that it should transfer property which would be liable to be taken in execution for the payment of debts." Wood v. Chambers, 20 Tex. 254, 70 Am. Dec. 382. "The land having been, at the time of the conveyance by William and Duana Welborn to Thomas Welborn, the separate property of the wife, it was not liable for the husband's debts, and therefore no kind of conveyance or disposition of it could have had the effect to defraud his creditors. The fact that the fears of the parties were excited, and that they were willing to convey it fraudulently, if that was necessary to protect it, or that if it had been the husband's property they would have committed a fraud by conveying it to avoid the payment of his debts, does not affect or change the rule." Evans v. Duana Welborn et al., 74 Tex. 534, 12 S. W. 230, 231, 15 Am. St. Rep. 858. "The moving or primary purpose of a debtor, in paying to a creditor a debt by conveying to him property, or in mortgaging property to secure a debt due to him, may be to prevent some other creditor from subjecting it to the payment of a sum due to him; but this, within the meaning of the law, will not render the conveyance or mortgage fraudulent as to such creditor, if his purpose is solely to have payment or security for the sum actually due." Haas v. Kraus, 86 Tex. 689, 27 S. W. 256, 257. "That a conveyance upon a trust, such as that shown by the evidence, constitutes the cestui que trust the equitable owner of the property, is not to be disputed, unless the motive with which the deed is made vitiates the trust; and we think the law has no concern with the futile intent to protect the property from a claim which its owner fears may be asserted against him, but which is never asserted, and does not exist." Rivera v. White, 94 Tex. 541, 63 S. W. 125, 126. In the last case cited it is also held by the Supreme Court that: "No policy of the law is thwarted by a mere motive which cannot work injury to creditors." Also see Humphreys-Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607.

Most certainly the making of said agreement and the carrying out thereof did not have the effect of withdrawing from the reach of any of his creditors any of his property out of which any creditor of his had a right to have such creditor's claim satisfied.

The general law (common law) is thus stated in 12 Ruling Case Law at page 491, § 24:

"No creditor can be said to be delayed, hindered, or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn from his reach."

The decisions of our own Supreme Court commencing with the case of Wood v. Chambers, 20 Tex. 254, 70 Am. Dec. 382, point out that the English courts have always so held in construing the Statute of Queen Elizabeth, which is precisely the statute of this state on the subject except as to trusts.

So the only question that could arise would be, "Did Gray, at the time the said agreement was made by him and Belle Kaliski, have any interest in the land subject to execution or to which a judgment lien could attach?" I think he had no such interest.

In Catlin v. Bennatt, 47 Tex. 165, it was held by the Supreme Court that: "A vendor of lands, who has executed his bond for title, on payment of the purchase-money, has placed the purchaser in possession, and has transferred or collected the notes for the purchase-money, retains the legal title simply as trustee, and has no interest in the land subject to execution."

In Willis & Bro. v. Sommerville, 3 Tex. Civ. App. 509, 22 S. W. 781, one Dennis Corwin had sold and conveyed to one Stone and one Dickey two tracts of land, receiving a part of the purchase price in each instance in cash, and reserving an express lien on each tract for the balance of the purchase price of such tract. P. J. Willis & Bro. obtained a judgment against the said Corwin, and an abstract thereof was duly recorded and indexed in the county where said tracts of land were located. Later on these tracts of land were sold under execution issued on said judgment, and the said Willis & Bro. bought them in at the execution sale, and a sheriff's deed was duly made to them purporting to convey to them said tracts of land. In a trespass to try title suit brought by Willis & Bro. against purchasers from Stone and Dickey, who had purchased after the said abstract of the judgment had been duly recorded and indexed, it was held by the Court of Civil Appeals for the Second Supreme Judicial District that the interest of Dennis Corwin in the two tracts of land by reason of the reservation of the express lien on the tracts to secure the payment of the balance of the purchase price was not such an interest in the land as was subject to execution or to which a judgment lien could attach.

A writ of error was refused by the Supreme Court in this case, and later on this decision was expressly approved by the Supreme Court in Douglass v. Blount, 95 Tex. 380, 67 S. W. 484, 58 L. R. A. 699.

The Court of Civil Appeals for the Fifth Supreme Judicial District held likewise in the case of Rutherford v. Mothershed, 42 Tex.

Civ. App. 360, 92 S. W. 1021, and the Supreme Court refused a writ of error.

The Court of Civil Appeals for the First Supreme Judicial District held in the case of Brotherton v. Anderson, 27 Tex. Civ. App. 587, 66 S. W. 682, 683, as follows: "There having been no rescission of the sale of the land by Levy to Brotherton and Reynolds, and Levy having transferred the notes to Beddingfield, he [Levy] became merely the holder of the legal title as trustee for the benefit of the holder of the notes, and had no interest in the land subject to the lien of the judgment in favor of L. Puster & Co. against him, or subject to * * * execution."

The same Court of Civil Appeals held in the case of Puster v. Anderson, 27 Tex. Civ. App. 626, 66 S. W. 684, in a case almost precisely identical in facts with the case at bar, that a vendor who has retained an express lien on the land sold and conveyed by him to his vendee to secure the payment of the balance of the purchase price has no interest in the land subject to execution or to which a judgment lien will attach.

The Supreme Court refused a writ of error in both of these cases decided by the Court of Civil Appeals for the First district.

The Court of Civil Appeals for the Eighth district decided to the same effect in the case of Ross v. Bailey, 143 S. W. 961.

It being thus established by the decisions of the Supreme Court and the decisions of the Courts of Civil Appeals cited that, at the time he and Belle Kaliski made the said agreement, Gray had no interest in the land subject to execution or to which a judgment lien could attach, then how can it be said that the making and carrying out of said agreement was fraudulent as to his creditors? By reason of said agreement and the carrying out thereof, was any property of his out of which any creditor had a specific right to have his claim satisfied withdrawn from the reach of such creditor? Most certainly not. Therefore the transaction was not fraudulent as to the creditors of Gray regardless of his intent.

So far I have dealt with the matter on the assumption that one of the motives that prompted Gray to make the agreement was a desire on his part to save his contingent interest in the property from being sacrificed. Was this a dishonest motive? Has not a debtor the right to prefer a creditor by giving a mortgage on his property to secure his debt to such creditor? Did Gray defraud his other creditors when, in consideration of her releasing her trust deed lien on the land securing the payment of the debt Gray owed to her, he transferred the Elliff notes given to him for the balance of the purchase price of the land together with the superior title to the land that he had retained in the deed made by him to the said Elliff? Most as-

suredly not, for, under the decisions of the appellate courts of this state as well as under the general law as stated in 12 Ruling Case Law hereinbefore cited, Gray had no interest in the land at the time subject to execution or to which a judgment lien could attach. This transaction did not have the effect of withdrawing from the reach of any other creditor any property out of which such creditor had a specific right to have his debt satisfied.

Belle Kaliski undoubtedly held, at the time said agreement was made, a lien on the land superior to any claim of any other person, and Gray had no interest in the land subject to execution or to which any judgment lien against him could attach. She undoubtedly had the right that her superior lien on the property should be maintained. The agreement made by her and Gray simply did this and nothing more; that is to say, when this agreement was carried out, she was exactly to all intents and purposes in the position she was at the time the agreement was made. She still held the superior lien on the property, and the position of Gray's other creditors was not changed in the slightest degree. These other creditors of Gray had no specific right to have any interest in the property that Gray might have to have their claims against Gray subject to the payment of their claims out of the property. Therefore the agreement that was made by Gray and Belle Kaliski could not deprive them of any right; and said agreement was a perfectly lawful agreement. It did not remove from their reach, when carried out, any interest that Gray might have in the property to which they had the specific right to have subjected to the payment of the debts that Gray owed them.

The jury were justified in finding that, in making and carrying out said agreement, Gray did not intend to hinder, delay, or defraud his other creditors under the law. The agreement to protect her in her prior lien that she held was most certainly lawful, for this was her absolute right. The carrying out of said agreement did this and nothing more. This did not and could not have defeated any right of any other creditor of his (Gray's). Gray's testimony showed that he did not intend, by making said agreement and carrying it out, to defeat any other creditor of his, and that he afterwards paid off and satisfied the debts of his other creditors who held said judgment liens. McClure v. Sheek's Heirs, 68 Tex. 426, 4 S. W. 552.

The nature of the title of the vendee to land that has been conveyed to him by a vendor who reserved an express lien in the deed made by him to the vendee securing the payment of the balance of the purchase money has at last been settled by the decisions of the Supreme Court. It was loosely stated for a long time by the decisions of the Supreme

Court that such a transaction constituted an executory contract of sale and purchase. But this is now thoroughly exploded. The Supreme Court has finally determined that the vendee in such a case takes the legal title to the land subject to be defeated by a condition subsequent, to wit, in case of failure by the vendee to pay the balance of the purchase price, the vendor after reasonable notice to the vendee, can rescind the transaction and declare the vendee's legal title to the land at an end; that is to say, the vendee holds what is called in the common law a qualified or base fee subject to be defeated by a condition subsequent.

If Belle Kaliski had elected to rescind on account of Elliff's default, she would have put an end to Elliff's legal title to the land, and she would then have held the legal title; but she would have held it as a security for the debt that Gray owed to her because she held the so-called superior title and the notes as a security for the payment of the debt Gray owed her.

Now, when she and Gray made the said agreement and it was carried out, she was exactly in the same position that she would have been had she exercised her right to rescind; that is to say, she held the apparent legal title to the land as a security for her debt that Gray owed her just the same as she would have held the apparent legal title to the land as a security for the debt Gray owed her had she elected to rescind.

Now, how on earth can any one claim that, merely because Gray got her to exercise her legal right to have suit brought on the notes against Elliff to recover the amount of said notes and to foreclose the lien on the land securing the payment of the amount of the notes and to have this suit prosecuted to judgment and sale of the land and have the land bid in for her at the sale when no one else bid a sufficient amount to satisfy the judgment, this act of Gray's in getting her to pursue this course was a fraud on his creditors? Did she not have a perfect right to be protected to the fullest extent in her security? Did Gray commit any fraud on his creditors in acting for her in this transaction? The debt he owed her was not due at the time the agreement was made, nor was it due at the time the agreement was carried out.

In the discussion of this case the jury took the view, which was well supported by the evidence, and they were justified in finding, that Gray did not intend to hinder, delay, or defraud his other creditors under the law, and I cannot approve of the idea of setting aside their finding. The finding of a jury, supported by evidence, is binding generally upon this court, for that is what the jury is for. The trial court, who heard the evidence, and had full opportunity to pass upon the witnesses testifying, did not set aside, but approved, the facts.

The court erred, as a matter of fact, in holding that "the legal title to the land was in Gray," as the testimony shows that the legal title was in Belle Kaliski, which makes a very great difference. Whatever equity, if any, Gray had could not be reached in this suit, for the legal title to the land was not in him.

The case seems to have been fairly tried, and the finding of the jury, supported by the evidence, should stand. The judgment should be affirmed.

Though lengthy, I file this my dissent.