## GRAY et al. v. KALISKI.*
### No. 1301—5794.

Commission of Appeals of Texas, Section B.
Jan. 6, 1932.

John C. Wall, J. C. Sullivan, and Don A. Bliss, all of San Antonio, for plaintiffs in error.

F. H. Booth and Robert G. Harris, both of San Antonio, for defendant in error.

RYAN, J.

Mrs. Belle Kaliski brought this suit in trespass to try title against C. J. Gray, Don A. Bliss, and D. Sullivan to recover the title to and possession of a 33-acre tract of land out of the I. Perez survey No. 93, situated in Bexar county.

It appears from the record that on January 3, 1910, C. J. Gray, then the owner of the property in controversy, executed and delivered to Mrs. Kaliski, his three certain promissory notes, two for the sum of $1,100 each and one for the sum of $1,050, aggregating $3,250, with interest at the rate of 10 per cent. per annum, payable semiannually, and 10 per cent. attorney's collection fees in case of default, payable one, two, and three years, respectively, after date. To secure payment of said notes, Gray executed and delivered to her his certain deed of trust on property located in San Antonio, Tex., and afterwards, on or about

May 6, 1910, he executed and delivered to her, his certain deed of trust upon the property involved in this suit.

On or about October 16, 1912, said Gray sold the property in controversy herein to one J. A. Elliff, who, as part consideration therefor, executed and delivered to Gray his two certain promissory notes, each for the sum of $2,000, with interest, to secure which an express vendor's lien was reserved. These notes and the vendor's superior title were then assigned by Gray to Mrs. Kaliski, in lieu of the anterior deed of trust lien on the property involved herein, which she released.

She had, as additional security, certain vendor's lien notes to the amount of $2,500, principal, on other property, executed by one Vollmer, which she afterwards collected from Vollmer.

Elliff made default, and his notes were delivered by Mrs. Kaliski to Gray for suit and foreclosure of the lien securing them, with the understanding, as alleged by her in her pleadings, that the judgment of foreclosure, when obtained, should be substituted as security for said notes.

Thereafter Gray instituted suit against Elliff in the district court of Bexar county, in his own name, obtained judgment, and at foreclosure sale on or about April 6, 1915, the property was bid in by said Gray or some one acting for him, in the name of Mrs. Kaliski, and at his request the sheriff executed deed conveying said property to her for a recited consideration of $1,000, of which only the costs were paid; the balance, amounting to $954.65, was credited on the judgment.

It was pleaded by Mrs. Kaliski that, in addition to said three notes aggregating, in principal, the sum of $3,250, Gray was indebted to her in a promissory note for the sum of $500, dated December 26, 1914, payable on January 1, 1915, with interest at the rate of 10 per cent. per annum from December 7, 1908, and another promissory note for the sum of $337.-50, dated May 29, 1915, payable twelve months after date, with interest at the rate of 10 per cent. per annum.

Gray continued to occupy the property, and Mrs. Kaliski pleaded that, after said sheriff's sale to her on April 6, 1915, there was an understanding between them that he should continue to occupy said property as her tenant, and, when he should pay to her the amount of said notes, she would convey said property to him, which she is ready, able, and willing to carry out.

Gray's contention was that, upon Elliff's default, Mrs. Kaliski agreed with him that suit should be brought in his name to recover the amount of Elliff's notes and to foreclose the lien, and such judgment, when secured, should be held by her as security for Gray's debt to her, also that an order of sale on said judgment of foreclosure should be had, and if,

at the sheriff's sale thereunder, any other person should bid and pay a sufficient amount to pay off and satisfy the judgment, the proceeds of sale were to be paid to her to the extent of satisfying Gray's indebtedness, the balance to be paid to him; but, if the property should be bought in by Gray to protect Mrs. Kaliski and himself, the sheriff's deed should be made to her, and she should hold the sheriff's deed as a substituted security for such indebtedness, and it was therefore a mere mortgage constituting a lien to secure any such indebtedness. He further pleaded that he had paid, by transfers of notes, the amounts of which Mrs. Kaliski has collected, and payments of money, the full amount of his indebtedness to her, but, if not, then her claims therefor are barred by the statute of limitations of four years.

Mrs. Kaliski, by supplemental petition, pleaded that, if there was such an agreement, as claimed by Gray, her title as evidenced by the sheriff's deed should be held merely as security, the same was entered into, on his part, for the purpose of hindering, delaying, and defrauding his creditors, as he was indebted to sundry other persons, some of whom had recovered and abstracted judgments against him; that, because Gray caused the title to be vested in her, he was enabled to and did conceal from his creditors that he had any interest in said property, and thereby induced such creditors to accept for their debts far less than the actual amounts due thereon.

In December, 1914, maturity date of the indebtedness of Gray to Mrs. Kaliski, amounting to $3,250 (principal), secured by the Elliff two notes amounting to $4,000 (principal) and notes of W. J. Vollmer secured by a vendor's lien in favor of Gray on other property amounting to $2,500 (principal), was, by agreement of Gray and Mrs. Kaliski, extended to January 3, 1916.

On February 15, 1926, Gray, to secure an indebtedness of $1,000 to Don A. Bliss, executed deed of trust lien on the property involved herein, which was foreclosed by trustee's sale on January 4, 1927, and Bliss became the purchaser. Bliss had previously assigned the Gray obligation to D. Sullivan & Co., a banking firm, and, after purchasing at the trustee's sale, he made a new deed of trust to Sullivan, which is still extant and unpaid.

The original petition herein was filed on December 17, 1926. Gray and Bliss pleaded specially in separate answers and said Bliss sought in a cross-action to recover of Mrs. Kaliski the title to and possession of the land in controversy. He alleged his ownership under said trustee's sale, that he was placed in possession thereof, and now holds such possession.

The cause was submitted to a jury upon the following special issues, viz.:

"Question No. 1.—Did the plaintiff Belle

Kaliski and the defendant C. J. Gray at any time prior to the date of the delivery of the sheriff's deed on July 20th., 1915, enter into any agreement that after judgment was obtained in the suit against J. A. Elliff, the land should be purchased at Sheriff's sale and the title thereto taken in the name of the plaintiff, and that she should thereafter hold the land as security for the payment of the notes to C. J. Gray payable to the plaintiff aggregating the sum of $3,250.00? Answer 'Yes' or 'No.'

"If you have answered Question No. 1 'No,' you need not answer Question No. 2, but if you answer Question No. 1 'Yes,' you will then answer Question No. 2.

"Question No. 2:—Was the agreement inquired about in Question No. 1 entered into by the defendant C. J. Gray for the purpose of hindering, delaying and defrauding the creditors of the said C. J. Gray? Answer 'Yes' or 'No.'

"If you have answered Question No. 2 'No,' you need not answer Question No. 3, but if you answer Question No. 2 'Yes', you will then answer Question No. 3.

"Question No. 3—Did the agreement inquired about in Question No. 1 in fact actually have the effect of hindering, delaying and defrauding the creditors of the said C. J. Gray? Answer 'Yes' or 'No.'

"To which special issues the jury returned the following verdict, to-wit:

"To Question No. 1, we answer: Yes.

"To Question No. 2, we answer: No.

"To Question No. 3, we answer ———."

The trial court thereupon rendered judgment that Mrs. Kaliski take nothing against the defendants Gray, Bliss, and Sullivan, and that Bliss recover of her the title to and possession of the land in controversy.

From that judgment Mrs. Kaliski sued out writ of error to the honorable Court of Civil Appeals for the Fourth Supreme Judicial District; the majority of the judges of that court reversed the judgment of the trial court and remanded the cause to the trial court, on the ground that, even if it be admitted that Gray permitted or induced Mrs. Kaliski to purchase the land at sheriff's sale merely as security for debt and that the sheriff's deed to her was in truth a mortgage to secure her in the debt she held against him, accompanying this purpose and design was the more potent motive of concealing property from his creditors, and the verdict of the jury was contrary to the undisputed facts. The dissenting judge is of the opinion that the jury, well supported by the evidence, were justified in finding as they did, and therefore the judgment should be affirmed. 28 S.W.(2d) 931.

## Opinion.

■ When the agreement was made, the legal title was in Elliff, subject to the vendor's lien for purchase money, and subject to the vendor's right to rescind upon Elliff's failure to pay the balance of the purchase price. Such vendor's lien and all rights reserved against the property, commonly called the vendor's superior title, had been assigned by Gray, the vendor, to Mrs. Kaliski, and he therefore had no interest in the property that could be subjected to the payment of their debts by other creditors.

In Willis v. Sommerville, 3 Tex. Civ. App. 509, 22 S. W. 781, 782, in which writ of error was refused, afterwards cited with approval by the Supreme Court in Douglass v. Blount, 95 Tex. 380, 67 S. W. 484, 58 L. R. A. 699, it is stated: "The interest of a vendor in land sold by him, where a portion of the purchase money is paid and a lien is expressly retained for the balance, is not such an interest as can be sold under execution until there has been a rescission of the sale."

The same doctrine was reaffirmed in Rutherford v. Mothershed, 42 Tex. Civ. App. 360, 92 S. W. 1021; Brotherton v. Anderson, 27 Tex. Civ. App. 587, 66 S. W. 682; Puster v. Anderson, 27 Tex. Civ. App. 626, 66 S. W. 684; and Ross v. Bailey (Tex. Civ. App.) 143 S. W. 961; writ of error was denied in each of said cases.

Gray had no interest in said land that was subject to execution, and therefore no other creditor of Gray could complain.

■ The correct rule is announced in 12 R. C. L. p. 491: "No creditor can be said to be delayed, hindered or defrauded by any conveyance until some property out of which he has a specific right to be satisfied is withdrawn from his reach."

■ It is now the settled law in this state that, while a deed with vendor's lien reserved to secure purchase money or part thereof is an executory contract between the vendor and vendee, and these in privity with them, it is so only in the sense that the naked legal title remains in the vendor, to be automatically vested in the vendee upon payment of the purchase money; in all other respects, between such parties, and in all respects in so far as strangers to the transaction are concerned, the deed is not executory, but is an executed contract. Humphreys–Mexia Co. v. Gammon, 113 Tex. 247, 254 S. W. 296, 29 A. L. R. 607.

■ Mrs. Kaliski therefore held, at the time the agreement was made, a lien superior to any claim of any other person, and Gray had no interest in the land subject to execution or to which any judgment lien against him could attach. She had the right to have her superior lien maintained; the agreement

made by her and Gray simply did this and nothing more. Under the agreement she was to all intents and purposes in the same position as before. She still held the superior lien on the property, and the position of Gray's other creditors was not changed. The agreement, as a matter of law, did not deprive them of any right, and did not remove from their reach, when carried out, any interest that Gray might have in the property to which they had the specific right to have subjected to the payment of Gray's debts, if any, to them.

▮▮ The moving or primary purpose of a debtor in paying a debt to a creditor by conveying to him property, or in mortgaging property to secure a debt due to him, may be to prevent some other creditor from subjecting it to the payment of a sum due to him, but this, within the meaning of the law, will not render the conveyance or mortgage fraudulent as to such creditor, if the purpose is solely to have payment or security for the sum actually due. Haas v. Kraus, 86 Tex. 687, 27 S. W. 256. So here, Mrs. Kaliski, having as a result of the sheriff's deed, acquired the Elliff title and thereby eliminated him, the Elliff legal title, so far as security was concerned, stood in the place of the vendor's lien against him, and in turn became security for Gray's debt to her. It was the intention of both Gray and Mrs. Kaliski, as testified to by them, to secure her, and the transaction was not fraudulent. Haas v. Kraus, supra.

The effect of the holding of the Court of Civil Appeals by their majority opinion, is the conclusion, as a matter of law, that the undisputed evidence showed the transaction in question violative of the statute against fraudulent conveyances; the consequence of such a holding, if correct, is that the jury should have been instructed to find for Mrs. Kaliski.

We think the evidence was sufficient to take the case to the jury.

Plaintiff in error contends that we should reverse the judgment of the Court of Civil Appeals and affirm that of the district court on the ground that there was evidence sufficient to support the submission of the issue and the jury's finding thereon, and the Court of Civil Appeals erred in holding in effect that there was no such evidence.

▮▮ As said by Judge Denman in Fifth National Bank v. Iron City National Bank, 92 Tex. 436, 49 S. W. 368, 369:

"The court of civil appeals * * * has the power to reverse on the ground that, in its opinion, the evidence is not sufficient, and this court has no power to review their action on such question of fact. It is only where that court goes further * * * and holds that there is not any evidence for the jury, that this court can review its ruling,

and then only to the extent of determining the question of law whether there is any evidence."

And as said by Judge Greenwood in Marshburn v. Stewart, 113 Tex. 507, 254 S. W. 942; 260 S. W. 565, 566:

"There is a difference in the authority of the Supreme Court in causes wherein the Court of Civil Appeals enters a final judgment by affirming that of the trial court or by rendering a different judgment, and in causes wherein the judgment of the trial court is reversed and the case remanded for a new trial. The distinction was stated with clearness and precision in Tweed v. Western Union Telegraph Co., 107 Tex. 255, 166 S. W. 696, 177 S. W. 957, as follows: 'With the Court of Civil Appeals invested with the full power of determining the facts of the cause, and setting aside the verdict of a jury on the facts, it must be assumed, * * * that in reaching a conclusion that the evidence showed as a matter of law that the plaintiff was not entitled to recover, and for that reason ordering that the cause be remanded, in the same case it would have held that the verdict was against the weight of the evidence. With a case thus remanded under the judgment of the Court of Civil Appeals, it would amount to a denial of its authority to determine the facts and set aside a verdict on the evidence for this court to assume the power of rendering the judgment because it differed with the conclusion reached by that court upon the effect of the evidence.

" 'Beck v. Texas Company, 105 Tex. 303, 148 S. W. 295, furnishes no analogy. The distinction between that case and this one is manifest. There the court did not exercise the authority it possessed to set aside the verdict on the facts and remand the cause. It rendered judgment in favor of the defendant on the facts; and in doing so made no finding of fact which would defeat recovery. In differing with the Court of Civil Appeals upon the question of law as to the effect of the evidence, we were authorized to affirm the judgment of the lower court, since the Court of Civil Appeals had not sought to exercise its province of determining the facts and· ordering the case remanded for another trial because of its difference with the jury on the facts, and in affirming the judgment we therefore in no wise trenched upon its authority. Had the Court of Civil Appeals there remanded the case instead of rendering judgment, we would have been compelled to respect its judgment to that extent and could not have affirmed the trial court judgment.' "

We therefore have no authority to render judgment here for plaintiff in error or to affirm the judgment of the district court. Maddox Motor Co. v. Ford Motor Co. (Tex. Com. App.) 23 S.W.(2d) 333; Belser v. Herman Hale Lumber Co. (Tex. Com. App.) 41 S.W. (2d) 208.

The Court of Civil Appeals having remanded the cause, its judgment to that extent must be respected.

We therefore recommend that the judgment of the Court of Civil Appeals, which reversed the judgment below and remanded the cause for a new trial, be affirmed.

CURETON, C. J.

Judgment of the Court of Civil Appeals reversing that of the district court affirmed, with instructions to the trial court to follow the opinion of the Commission of Appeals on the subsequent trial.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.